608 So.2d 784 (1992)
Konstantinos X. FOTOPOULOS, Appellant,
v.
STATE of Florida, Appellee.
No. 77016.
Supreme Court of Florida.
October 15, 1992.
Rehearing Denied December 24, 1992.
*786 Douglas N. Duncan of Wagner, Nugent, Johnson, Roth, Kupfer and Rossin, P.A., and Philip G. Butler, Jr., West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., and Kellie A. Nielan, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Konstantinos X. Fotopoulos appeals his numerous convictions and sentences, which include two sentences of death. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and affirm the convictions and sentences.
The following is a brief summary of the facts that were developed at Fotopoulos' trial. During the summer of 1989, Fotopoulos began an affair with Deidre Hunt, a bartender at Fotopoulos' bar. Hunt testified that one day in mid-to-late October 1989 Fotopoulos, Hunt, and Kevin Ramsey drove out to an isolated rifle range. According to her testimony, after they arrived Fotopoulos told Hunt she was going to have to shoot Ramsey or she would die. Ramsey, who had been led to believe he was being initiated into a club, was tied to a tree. While Fotopoulos videotaped, Hunt shot Ramsey three times in the chest and once in the head with a .22. Fotopoulos then stopped taping and shot Ramsey once in the head with an AK-47. According to testimony, Ramsey was chosen as the victim because he was blackmailing Fotopoulos concerning Fotopoulos' alleged counterfeiting activities. The videotape of Hunt shooting Ramsey was recovered from Fotopoulos' residence pursuant to a search warrant. The voice on the tape was identified as that of Fotopoulos.
According to Hunt, Fotopoulos later used the videotape as leverage to insure that she would murder his wife, Lisa. Hunt was warned that if she did not cooperate the videotape of the Ramsey murder would be turned over to police. Hunt testified that Fotopoulos wanted Lisa dead so he could recover $700,000 in insurance proceeds. Fotopoulos later instructed Hunt that rather than kill Lisa herself she should hire someone to do the job. Prior to enlisting Bryan Chase to kill Lisa, Hunt offered three different individuals $10,000 to do the job. For various reasons, either the plans never materialized or the attempts to murder Lisa were unsuccessful. Chase then agreed to do the job for $5,000. He too botched several attempts to murder Lisa. However, on November 4, 1989, Chase entered the Fotopoulos home and shot Lisa once in the head. The shot was not fatal. After Chase shot Lisa, Fotopoulos shot Chase repeatedly in an attempt to make it appear that Chase was killed during a burglary.
Fotopoulos and Hunt eventually were charged with two counts of first-degree murder, two counts of attempted first-degree *787 murder, two counts of solicitation to commit first-degree murder, one count of conspiracy to commit first-degree murder, and one count of burglary of a dwelling while armed. Hunt pled guilty to all charges. She was given two death sentences prior to testifying at Fotopoulos' trial. See Hunt v. State, 1992 WL 289670, No. 76,692 (Fla. Oct. 15, 1992).
Fotopoulos testified in his own defense. He acknowledged his relationship with Hunt, but maintained that he had nothing to do with Ramsey's murder. He stated that he had loaned Hunt his business partner's video camera and she later gave him a tape as a surprise but he never looked at it. He admitted shooting Chase, but denied that he knew Chase was coming to shoot Lisa.
A jury found Fotopoulos guilty of all charges and recommended that he be sentenced to death for each murder. The trial court followed the jury's recommendation. In connection with the Ramsey murder, the court found that 1) Fotopoulos was previously convicted of another violent felony; 2) the murder was committed for the purpose of avoiding or preventing a lawful arrest; and 3) the murder was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification. As to the Chase murder, the court found the three aggravating factors found in connection with the Ramsey murder plus 4) the murder was committed while Fotopoulos was engaged or was an accomplice in the commission or an attempt to commit a burglary; and 5) the murder was committed for pecuniary gain. Although no statutory mitigating factors were found, the following nonstatutory mitigating factors were found as to both murders: 1) Fotopoulos was a good son; 2) he came from a good family; 3) he was hard-working; 4) he had good manners and he had a good sense of humor; and 5) he completed his education through the master's level. Fotopoulos was sentenced to concurrent life sentences in connection with the remaining convictions.
Fotopoulos raises the following sixteen claims in this appeal: 1) the trial court erred by permitting the State to use peremptory challenges to exclude black prospective jurors; 2) the trial court erred in denying repeated motions to sever count one (the Ramsey murder) from the remaining counts; 3) the trial court erred in permitting the State to impeach Fotopoulos on the basis of prior misconduct; 4) the trial court erred in permitting the State to impeach Fotopoulos on the basis of his prior testimony; 5) the trial court erred in failing to conduct a Richardson[1] hearing; 6) the cumulative errors committed require a new trial; 7) the refusal to sever the Ramsey homicide from the Chase homicide resulted in the denial of due process during the advisory sentencing proceedings; 8) the trial court erred in permitting the State to introduce during the penalty phase hearsay statements that the defense did not have a fair opportunity to rebut; 9) the trial court erred in not instructing the jury as to the Ramsey murder pursuant to this Court's decision in Jackson v. State, 502 So.2d 409 (Fla. 1986), cert. denied, 482 U.S. 920, 107 S.Ct. 3198, 96 L.Ed.2d 686 (1987); 10) the trial court improperly found that the Ramsey homicide was committed in a cold, calculated, and premeditated manner; 11) the trial court erred in denying the defense's motion to sever the Chase murder from the Ramsey murder; 12) the trial court erred in finding that the Chase murder was committed while Fotopoulos was engaged in a burglary; 13) the trial court improperly doubled its consideration of the pecuniary gain and cold, calculated, premeditated aggravators; 14) the trial court improperly doubled its consideration of the pecuniary gain and witness-elimination aggravators; 15) the aggravating circumstance of cold, calculated, and premeditated is unconstitutional; and 16) Florida's death penalty is unconstitutional.

JURY SELECTION
First, we find no merit to Fotopoulos' contention that the State was allowed to use peremptory challenges to exclude *788 black prospective jurors contrary to this Court's decision in State v. Neil, 457 So.2d 481 (Fla. 1984), clarified, State v. Castillo, 486 So.2d 565 (Fla. 1985), and clarified, State v. Slappy, 522 So.2d 18 (Fla.), cert. denied 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988), and limited by Jefferson v. State, 595 So.2d 38 (Fla. 1992). In this case, the State used two peremptory challenges to exclude black prospective jurors from the jury. The first black juror excluded was Mrs. Bostic; the second was Mrs. Gordon.
At the time the State challenged Mrs. Bostic, defense counsel noted that the prospective juror was black and objected. The trial court noted that the defendant is white and there were four black jurors. When asked by the court, the defense declined to elaborate as to how it was prejudiced by the State's challenge. The prosecutor pointed out that two black jurors had already been accepted by the State. He then explained that he challenged Mrs. Bostic because her son had been involved with the juvenile section of the State Attorney's office since 1987 and he felt Mrs. Bostic's extensive exposure to the office would make it difficult for her to maintain impartiality. Defense counsel's only response to this reason was that Mr. Grisham and several others had children who had been involved with the law. The trial court found that the defense had failed to meet its initial burden of demonstrating that there was a strong likelihood that the State was exercising peremptory challenges in a racially discriminatory manner. The court also found that the State had given a racially neutral explanation for the challenge.
Although broad leeway should be granted a defendant attempting to make a prima facie showing that a likelihood of discrimination exists, State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988), a trial court is vested with broad discretion in determining whether peremptory challenges are racially motivated. Reed v. State, 560 So.2d 203 (Fla.) cert. denied, ___ U.S. ___, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990). We find no abuse of discretion in connection with the trial court's findings.
The fact that a juror has a relative who has been charged with a crime is a race-neutral reason for excusing that juror. Bowden v. State, 588 So.2d 225, 229 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1596, 118 L.Ed.2d 311 (1992). Fotopoulos' claim that this reason is not supported by the record was not raised below and therefore has been waived. 588 So.2d at 229. As noted above, defense counsel's only response to the asserted reason was that Mr. Grisham and several other jurors had children who had been involved with the law. The record demonstrates that Mr. Grisham's situation was distinguishable from that of Mrs. Bostic. It was Mr. Grisham's stepson, who had never lived with him, who had been involved with the law. In fact, after further questioning it was revealed that Mr. Grisham had been one of his stepson's victims and his dealings with the State Attorney's office was as a victim. Likewise, there is no indication that other jurors with children or relatives who had been involved with the law had extensive dealings with the State Attorney's office.
The State later used a preemptory challenge to excuse Mrs. Gordon. Again, the only basis for the defense's objection to the challenge of Mrs. Gordon was the fact that she was black. However, "out of an abundance of caution" the court asked the State to give reasons for the challenge. The prosecutor stated that Mrs. Gordon was opposed to the death penalty, her grandson was facing a trial on drug trafficking, and Mrs. Gordon's car had been seized as a result of her grandson's criminal activity. Defense counsel failed to challenge these reasons, responding "Nothing further." The court again overruled the Neil objection, finding that 1) there had been no initial showing of a strong likelihood of discrimination and 2) even if there had been an adequate showing, the State had presented race-neutral reasons. Again, we find no abuse of discretion in connection with these rulings. Moreover, Fotopoulos' challenges to the stated reasons have not been preserved because they *789 were not raised below. Bowden, 588 So.2d at 229; Floyd v. State, 569 So.2d 1225, 1230 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991).

GUILT PHASE
Fotopoulos' next claim deals with the trial court's refusal to sever count I of the indictment, which charged the first-degree murder of Ramsey, from the remaining counts which charged the various crimes relating to the murder of Chase and the attempted murder of Lisa Fotopoulos. Fotopoulos was charged by both indictment and information. The two murder charges and several of the other offenses were charged by indictment. The remainder of the offenses were charged in two separate informations. All the offenses were consolidated for trial.
Prior to trial, Fotopoulos filed a motion for severance of offenses which alleged that no connection existed between the Ramsey murder and the other offenses charged. Through proffer, the State maintained that it would show that two days after the murder of Kevin Ramsey, Hunt was approached by Fotopoulos and recruited to assist him in a plan to murder his wife. According to the proffer, in order to obtain Hunt's cooperation, Fotopoulos used physical intimidation and the threat of disclosure of the videotape of the murder to coerce Hunt into cooperating. The motion was denied. A renewed motion for severance was later filed alleging that because Deidre Hunt refused to cooperate with the State, the State would be unable to introduce evidence to support its earlier proffer. The State then made an additional proffer based on the anticipated testimony of Teja James, one of the unsuccessful assassins and Lori Henderson, Hunt's best friend. In the proffer the State contended that Hunt killed Ramsey in order to be inducted into a secret "hunter/killer club" and thereby qualify herself to be involved in the later murder of Lisa Fotopoulos. The State also contended that the videotape of the earlier murder was used to coerce Teja James into participating in the later efforts to murder Lisa. Based on this proffer, the renewed motion was denied. An amended motion for severance also was denied.
In denying Fotopoulos' amended motion for severance, the trial judge stated that based on the proffer he was convinced that the offenses "are definitely connected in an episodic sense" and that they are "certainly connected in a temporal sense." The court further explained that, based on the proffer, shortly after the Ramsey killing the several plots to kill Lisa Fotopoulos were set in motion and they were "well connected."
Pursuant to Florida Rule of Criminal Procedure 3.150(a)
Two or more offenses which are triable in the same court may be charged in the same indictment or information in a separate count for each offense, when the offenses ... are based on the same act or transaction or on two or more connected acts or transactions.

(Emphasis added.) Similarly, "[t]wo or more indictments or informations charging related offenses shall be consolidated for trial on a timely motion... ." Fla. R.Crim.P. 3.151(b). Offenses are "related" for purposes of rule 3.151(b) "if they are triable in the same court and are based on the same act or transaction or on two or more connected acts or transactions." Fla. R.Crim.P. 3.151(a).
Quoting from our decision in Garcia v. State, 568 So.2d 896, 899 (Fla. 1990), we recently reiterated that the:
"connected acts or transactions" requirement of rule 3.150 means that the acts joined for trial must be considered "in an episodic sense[.] [T]he rules do not warrant joinder or consolidation of criminal charges based on similar but separate episodes, separated in time, which are `connected' only by similar circumstances and the accused's alleged guilt in both or all instances." Paul [v. State, 365 So.2d 1063, 1065-66 (Fla. 1st DCA 1979) (Smith, J., dissenting), adopted in part, 385 So.2d 1371, 1372 (Fla. 1980).] Courts may consider "the temporal and geographical association, the nature of the crimes, and the manner in which they were committed," Bundy [v. State, 455 So.2d 330, *790 345 (Fla. 1984), cert. denied, 476 U.S. 1109, 106 S.Ct. 1958, 90 L.Ed.2d 366 (1986)]. However, interests in practicality, efficiency, expense, convenience, and judicial economy, do not outweigh the defendant's right to a fair determination of guilt or innocence. [State v.] Williams, 453 So.2d 824, 825 (Fla. 1984).
Wright v. State, 586 So.2d 1024, 1029-30 (Fla. 1991). The use of the phrase "connected acts or transaction" in rule 3.151(a) likewise means that offenses consolidated for trial must be "connected in an episodic sense." Livingston v. State, 565 So.2d 1288, 1290 (Fla. 1988).
Upon timely motion, a defendant has the right to a severance of charges when two or more offenses are improperly charged in a single indictment or information. Fla.R.Crim.P. 3.152(a)(1). A defendant also is entitled to severance of properly joined related offenses upon a showing that such is necessary to achieve a fair determination of the defendant's guilt or innocence of each offense. Fla.R.Crim.P. 3.152(a)(2); Bundy v. State, 455 So.2d 330, 345 (Fla. 1984), cert. denied, 476 U.S. 1109, 106 S.Ct. 1958, 90 L.Ed.2d 366 (1986); Johnson v. State, 438 So.2d 774, 778 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (Fla. 1984). However, granting a severance is largely a matter within the trial court's discretion. Johnson, 438 So.2d at 778. We find no abuse of discretion.
Based on the State's proffer, severance was not required under rule 3.152(a)(1) because the offenses were clearly connected in an episodic sense. Moreover, on this record, there was no showing that severance of the properly joined offenses was necessary to promote a fair determination of Fotopoulos' guilt or innocence. Rule 3.152(a)(2); Johnson, 438 So.2d at 778. Even if there had been separate trials, evidence of each offense would have been admissible at the trial of the other to show common scheme and motive, as well as the entire context out of which the criminal action occurred. See Craig v. State, 510 So.2d 857 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988); Bundy v. State, 455 So.2d at 345; Heiney v. State, 447 So.2d 210 (Fla.), cert. denied, 469 U.S. 920, 105 S.Ct. 303, 83 L.Ed.2d 237 (1984).
We also reject Fotopoulos' contention that the State failed to present evidence to support the denial of the motions for severance. In accordance with the proffer, Hunt testified that the morning after the Ramsey murder, Fotopoulos threatened her with the videotape of the Ramsey murder in order to coerce her into assisting Fotopoulos with his plan to murder his wife. There was testimony that after the Ramsey murder Fotopoulos warned Teja James, one of the unsuccessful assassins enlisted by Hunt, that he could either work for him or go down the same road as Ramsey.
As to claim 3, we agree that Fotopoulos "opened the door" for further cross-examination concerning his convictions for counterfeiting. Fotopoulos testified on his own behalf. When asked on cross-examination if he had previously been convicted of a felony, Fotopoulos answered he "was at one time convicted of six counts." Defense counsel then interrupted, stating that "that's all he has to say." After the trial court warned counsel not to interfere when the witness was responding, the following exchange occurred:
Q. Is that all you want to say?
A. I just want to mention it was non-violent.
Q. Six prior felonies?
A. Yes, sir, one incident that was compounded.
Q. Well, that's not really correct, is it, it's not just one incident?
A. It was done at one time, just like these charges are all piled up.
Q. Isn't it true though that you pled guilty to six different felonies covering a period over several years?
A. No, all of the incidents happened within a year and a couple of months, I believe.
Over objection, the State was permitted to go into the details of the prior convictions. *791 Certified copies of the federal convictions were later admitted without objection.
Under section 90.610, Florida Statutes (1989), a party may attack the credibility of any witness, including the accused, by evidence of a prior felony conviction. Unless the witness answers untruthfully, this inquiry is generally restricted to the existence of prior convictions and the number of convictions. Fulton v. State, 335 So.2d 280 (Fla. 1976); McArthur v. Cook, 99 So.2d 565 (Fla. 1957); Leonard v. State, 386 So.2d 51, 52 (Fla. 2d DCA 1980). However, when a defendant attempts to mislead or delude the jury about his prior convictions, the State is entitled to further question the defendant concerning the convictions in order to negate any false impression given. See Leonard, 386 So.2d at 52; Dodson v. State, 356 So.2d 878 (Fla. 3d DCA), cert. denied, 360 So.2d 1248 (Fla. 1978); cf. McCrae v. State, 395 So.2d 1145, 1151 (Fla. 1980) (although the scope of cross-examination generally should be no broader than the scope of direct examination, state was entitled to question defendant regarding the nature of prior felony conviction in order to negate the delusive innuendoes of his counsel), cert. denied, 454 U.S. 1041, 102 S.Ct. 583, 70 L.Ed.2d 486 (1981); Hernandez v. State, 569 So.2d 857 (Fla. 2d DCA 1990) (defendant who volunteered statements on cross-examination that he had never been involved in a drug-related deal opened the door to questioning about a heroin deal he had arranged two days prior to the instant offense). We reject the remainder of the claims of improper impeachment by prior misconduct. The majority of these claims were not preserved by contemporaneous objection, Farinas v. State, 569 So.2d 425, 429 (Fla. 1990); those claims that were preserved lack merit.
Fotopoulos next contends that the trial court erred in permitting the State to impeach his trial testimony with testimony given at a prior hearing because defense counsel had not been provided a copy of the record testimony. This claim has not been preserved for appeal. Farinas. After defense counsel pointed out that he did not have a copy of the transcript of the prior testimony, he was given a copy. Counsel then stated that he was not counsel at the time of the hearing, but no further objection was lodged.
Fotopoulos' contention that he was entitled to a Richardson hearing on the State's failure to provide defense counsel with a copy of the transcript of his prior record testimony clearly is without merit because the trial court was never apprised of the so-called discovery violation.
Likewise, we find no merit to Fotopoulos' claim that the cumulative effect of these and numerous other alleged errors entitle him to a new trial.[2]
Although Fotopoulos does not challenge the sufficiency of the evidence, we observe that the record contains substantial competent evidence to support his convictions.

PENALTY PHASE
In claims 7 and 11 Fotopoulos maintains that the alleged error in denying his motions for severance was compounded in the penalty phase of the trial. In claim 7, he contends that the refusal to sever resulted in a due process violation during the penalty phase because the jury was instructed on five aggravating factors as to both murders when only three factors applied to the Ramsey murder. His assignment of error in claim 11 as to the Chase murder is a rather unclear recasting of the above argument made in connection with the Ramsey murder.
Although Fotopoulos claims that the motion for severance was renewed at sentencing, no motion for separate penalty proceedings was filed. Moreover, there was no objection to the penalty phase instructions *792 and no request for special jury instructions as to each murder. Therefore, claims 7 and 11 were not preserved for appeal. Sochor v. State, 580 So.2d 595, 602 (Fla. 1991), vacated on other grounds, ___ U.S. ___, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992); Vaught v. State, 410 So.2d 147 (Fla. 1982). Moreover, even if claim 7 were cognizable, instructing on five factors when only three were supported by the evidence did not violate due process because we can presume that the jury disregarded the factors not supported by the evidence. Sochor v. Florida, ___ U.S. ___, 112 S.Ct. 2114, 2122, 119 L.Ed.2d 326 (1992). This is particularly true in this case because the only factors urged during closing argument by the prosecution in connection with the Ramsey murder were those applicable to that offense. There also is no merit to claim 11 because the five factors instructed on were clearly applicable to the Chase murder.
Fotopoulos' eighth claim, that the trial court erred in permitting the State to introduce hearsay statements of Kevin Ramsey during the penalty phase, was not preserved by contemporaneous objection. As part of this claim, Fotopoulos contends that the trial court erred in finding that the Ramsey murder was committed for the purpose of avoiding or preventing a lawful arrest.[3] A motive to eliminate a potential witness to an antecedent crime, such as Fotopoulos' alleged counterfeiting, can provide the basis for this aggravating factor. Swafford v. State, 533 So.2d 270, 276 (Fla. 1988), cert. denied, 489 U.S. 1100, 109 S.Ct. 1578, 103 L.Ed.2d 944 (1989). An arrest need not be imminent at the time of the murder. Id. Such a motive can be inferred from the evidence presented in this case. As explained by the trial court:
Ramsey knew of the Defendant's illegal activities and planned to blackmail the Defendant. One of the dominant motives behind killing Ramsey was elimination of a witness hostile to the Defendant. The theme of witness elimination runs through this case, starting with Ramsey and ending with Chase.
We reject Fotopoulos' contention that because the trial court found that witness elimination was but "one of the dominant motives" for Ramsey's murder, this aggravating factor does not apply. While it is true that Fotopoulos needed a victim for Hunt to shoot while being videotaped, the record supports the conclusion that the dominant reason Ramsey was chosen was because he knew of Fotopoulos' illegal activities and planned to blackmail him. Proof of Fotopoulos' intent to avoid being arrested in connection with these activities was "strong" enough to support this factor. Cf. Jackson v. State, 502 So.2d 409, 411 (Fla. 1986), cert. denied, 482 U.S. 920, 107 S.Ct. 3198, 96 L.Ed.2d 686 (1987); Riley v. State, 366 So.2d 19, 22 (Fla. 1978).
We reject Fotopoulos' next claim that the trial court erred by not instructing the jury pursuant to Jackson v. State, 502 So.2d 409 (Fla. 1986), cert. denied, 482 U.S. 920, 107 S.Ct. 3198, 96 L.Ed.2d 686 (1987), in connection with the Ramsey murder. There was no objection to the instructions as given and no request for a special instruction. Therefore, the claim is not cognizable on appeal. Vaught, 410 So.2d 147. Moreover, Fotopoulos was convicted of first-degree premeditated murder. This verdict clearly reflects a finding that Fotopoulos actually killed or intended that a killing take place which comports with the requirements of Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).
Next we reject Fotopoulos' claim that the trial court erred in finding the Ramsey murder was committed in a cold, calculated, and premeditated manner. § 921.141(5)(i), Fla. Stat. (1989). Evidence of the heightened level of premeditation necessary to support this factor is clearly present in this case. Shere v. State, 579 So.2d 86, 95 (Fla. 1991); Rogers v. State, 511 So.2d 526, 533 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). As the trial court found:
[Ramsey] was lured to the woods under a ruse. The killing was staged like a production. [Fotopoulos] held a light and a *793 camera. When the equipment was thought to be in focus, Ramsey was shot three times in the chest by co-defendant Deidre Hunt. After a pause Hunt shot Ramsey in the head. While Ramsey was apparently still alive the Defendant administered a coup-de-grace with an AK-47. This killing was an execution done with greatly heightened premeditation.
The recited facts alone establish beyond a reasonable doubt that Fotopoulos carefully planned and prearranged the murder of Ramsey. Shere, 579 So.2d at 95.
Fotopoulos next maintains that the trial court erred in finding the Chase murder was committed during the course of a burglary. § 921.141(5)(d), Fla. Stat. (1989). We find no merit to the argument that because Fotopoulos gave Chase permission to enter his mother-in-law's home to murder his wife, the essential element of non-consent necessary for a burglary is lacking. We agree with the State that Fotopoulos, the son-in-law of the owner and occupant of the burglarized home, had no legal or moral authority to consent to entry by his coconspirator for the purpose of murdering another occupant. See K.P.M. v. State, 446 So.2d 723 (Fla. 2d DCA 1984) (son of owner and occupant of the burglarized home had no legal or moral right to consent to friend's entry into family home for purpose of stealing property that did not belong to son); see also Damico v. State, 153 Fla. 850, 16 So.2d 43 (1943) (corporate officer had no legal or moral right to consent to entry into jewelry store by coconspirator for purpose of committing theft). Moreover, Fotopoulos does not challenge his burglary conviction, which clearly supports the finding of this aggravating factor. See Perry v. State, 522 So.2d 817, 820 (Fla. 1988) (contemporaneous conviction for armed robbery supports finding that murder was committed during commission of a robbery).
We find no merit to Fotopoulos' claim that the trial court improperly doubled its consideration of the pecuniary gain[4] and cold, calculated, and premeditated[5] aggravating factors in connection with the Chase murder. Fotopoulos recognizes that we have rejected a similar claim in Echols v. State, 484 So.2d 568 (Fla. 1985), cert. denied, 479 U.S. 871, 107 S.Ct. 241, 93 L.Ed.2d 166 (1986). The two aggravating factors at issue were properly found in this case because, as in Echols, they "are not based on the same essential feature of the crime or of the offender's character." 484 So.2d at 574. The trial court's finding of the pecuniary gain aggravator is based on evidence that Fotopoulos killed Chase in furtherance of his plan to receive life insurance proceeds upon his wife's death. The finding of cold, calculated, and premeditated is based on evidence that Chase's murder was "carefully choreographed" to make it appear that Chase was killed during a burglary and that Chase's "execution" was "the culmination of several schemes and plots to kill Lisa Fotopoulos." As we stated in Echols,
There is no reason why the facts in a given case may not support multiple aggravating factors provided the aggravating factors are themselves separate and distinct and not merely restatements of each other as in a murder committed during a robbery and murder for pecuniary gain, or murder committed to eliminate a witness and murder committed to hinder law enforcement. Squires v. State, 450 So.2d 208 (Fla.), cert. denied, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984); Combs v. State, 403 So.2d 418 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982).
484 So.2d at 575.
Likewise, we reject Fotopoulos' claim that the aggravating factors of pecuniary gain and to avoid arrest[6] which were found in connection with the Chase murder were improperly doubled. As noted above, the pecuniary gain factor was found based on evidence that Chase hoped to receive life insurance proceeds upon his wife's death. The avoid arrest aggravator was found *794 based on evidence that Fotopoulos shot Chase to eliminate him as a witness to Lisa Fotopoulos' murder.
We also reject Fotopoulos' claim that the cold, calculated, and premeditated aggravating factor is unconstitutionally vague and overbroad, as procedurally barred because it was not presented to the trial court below. Moreover, we repeatedly have rejected the claim. Klokoc v. State, 589 So.2d 219, 222 (Fla. 1991); Brown v. State, 565 So.2d 304 (Fla.), cert. denied, ___ U.S. ___, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990).
Finally, none of numerous grounds[7] for challenging Florida's death penalty as unconstitutional raised in claim sixteen have been preserved for review. Even if these claims were cognizable, each lacks merit.
Accordingly, having found no reversible error, we affirm the convictions and sentences.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[2] The assignments of error include: 1) the defense's inability to adequately prepare for the cross-examination of Deidre Hunt deprived him of a fair trial; 2) the trial court erred in permitting the State to elicit irrelevant background history of Hunt; 3) the trial court erred in permitting repeated references to weapons, hand grenades, and other weapons; 4) the State improperly injected the issue of homosexuality into the trial; 5) the State made a feature of Fotopoulos' sexual life; and 6) the State improperly attacked Fotopoulos' character.
[3] § 921.141(5)(e), Fla. Stat. (1989).
[4] § 921.141(5)(f), Fla. Stat. (1989).
[5] § 921.141(5)(i), Fla. Stat. (1989).
[6] § 921.141(5)(e), Fla. Stat. (1989).
[7] The following is a list of the numerous challenges to Florida's death penalty raised in this claim: 1) although his jury was not given the instruction and the factor was not found by the trial court, the jury instruction on the aggravating factor of heinous, atrocious or cruel is unconstitutionally vague; 2) the jury instruction on the aggravating factor of cold, calculated and premeditated is unconstitutional; 3) the requirement that the jury's recommendation be given great weight unconstitutionally allows a "verdict by bare majority;" 4) the jury is not adequately instructed as to its role in sentencing contrary to Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); 5) failure to provide adequate counsel assures uneven application of the death penalty; 6) the trial court's role in sentencing is ambiguous; 7) the selection of sentencers in Florida is racially discriminatory resulting in death sentences based on racial factors; 8) Florida's aggravating circumstances are applied inconsistently at the appellate level; 9) Florida does not have the independent appellate reweighing of aggravating and mitigating circumstances required by Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); 10) the use of the contemporaneous objection rule results in disparate application of the law in capital sentencing; 11) the failure of Florida appellate review is demonstrated by this Court's inability to consistently apply Tedder v. State, 322 So.2d 908 (Fla. 1975); 12) the lack of a special verdict from the jury on aggravating and mitigating circumstances violates the Eighth Amendment; 13) the prohibition of mitigation of a death sentence under Florida Rule of Criminal Procedure 3.800 is unconstitutional; 14) Florida law unconstitutionally creates a presumption of death; 15) the burden of proof for mitigating factors is unconstitutional; and 16) electrocution is cruel and unusual punishment.