[No. G024951. Fourth Dist., Div. Three. June 20, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL CARR, Defendant and Appellant.

## COUNSEL

Kevin G. Little and Sara Stander, under appointments by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Laura Whitcomb Halgren and Steven T. Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BEDSWORTH, J.**—Daniel Carr appeals his conviction for burning a cross on another person's property without authorization. (Pen. Code, § 11411, subd. (c).)[1] Carr contends the court and prosecutor impermissibly undermined his efforts to show the cross burning was authorized. He also faults the court for disallowing his intoxication defense. We find no merit in Carr's intoxication defense, and *even less*—and that is exactly what we mean—in his argument that one person can "authorize" victimization of another.

David Shostak is Jewish. On the night of May 19, 1998, he was at his Huntington Beach home with his wife, Barbara, their 15-year-old son Jarod, and another son. David was just about to turn in when he noticed flames in his yard. When he looked outside, he saw a seven-foot cross burning on the side of his house. He sprinted to the cross, knocked it to the ground and extinguished the flames with his garden hose. Barbara, meanwhile, called 911.

David testified he was very upset when he saw the cross, and Barbara said her reaction was shock, horror and disdain. She said the cross burning was hateful and unlike anything she had ever experienced.

An investigation into the matter led the police straight to Carr. A high school senior at the time, he had bragged to friends about burning a cross on "some Jew's lawn." He also responded with glee when shown a newspaper article about the incident. When the police searched his bedroom, they found Nazi paraphernalia and an American flag containing the initials S.W.P., which, according to an expert on racist ideology, stand for "Supreme White Power."

Carr told police that on the night in question, he was drinking beer in a park with Derrick Yates and Dick Rutherford, who are friends of Jarod Shostak. At one point, he suggested that they burn a wooden cross he had built. Yates said they should burn it at Jarod's house, because the Shostaks are Jewish. Carr thought that was a good idea, so they retrieved the cross and, while Rutherford and Yates looked on, Carr placed it against the

---

[1]Carr was also charged with arson and an attendant hate crime enhancement. However, the jury deadlocked on that charge and it was subsequently dismissed.

All further statutory references are to the Penal Code.

Shostak house and set it on fire. Carr told police he did it to show his "white power beliefs."

At the time of trial, Yates had pleaded guilty to reckless burning. Testifying for the defense, he said he was friends with Carr and Jarod Shostak, but those two did not know each other. He and Carr had talked about burning the cross at the beach. However, Jarod subsequently asked Yates to burn the cross at his house because he was mad at his parents. A few days later, while he was in the park with Carr and Rutherford, he mentioned Jarod's request. At that point, they decided to burn the cross at the Shostak residence. According to Yates, the burning had nothing to do with the Shostaks' religious beliefs.

Carr told a similar story at trial. He said he planned to burn the cross at the beach in order to get attention and notoriety. But when Yates told him about Jarod's request, they agreed to burn it at the Shostak's house. Carr believed that Jarod had given Yates permission to burn the cross there. Carr knew the Shostaks were Jewish, yet he denied the burning was religiously motivated. While he and Yates torched the cross, Rutherford acted as a lookout. Afterward, Carr ran to a friend's house, changed clothing and then returned to the scene and watched from a distance.

Invoking his Fifth Amendment privilege, Jarod refused to testify at the trial. However, the parties stipulated that one week prior to the incident, Jarod suggested to Yates and Rutherford that they should burn the cross at his house because "he was mad at his parents; he didn't like his curfew and other rules."

## I

■ Carr asserts the court erroneously declined to instruct the jury on the issue of consent, and the prosecutor misstated the law in closing argument. Both of these assertions are based on the premise that Jarod was legally entitled to authorize the cross burning on his parent's property. We find this premise to be unfounded, and therefore we reject Carr's claims of error.

Carr was convicted of cross burning under section 11411, subdivision (c) (section 11411(c)). That provision provides, "Any person who burns or desecrates a cross or other religious symbol, knowing it to be a religious symbol, on the private property of another without authorization for the purpose of terrorizing the owner or occupant of that private property or in reckless disregard of the risk of terrorizing the owner or occupant of that private property" shall be punished by a fine and/or imprisonment.

While discussing jury instructions, Carr requested CALJIC No. 1.23, which sets forth the legal elements for consent.[2] Noting that lack of authorization is an element of section 11411(c), Carr's attorney stated, "I think authority is akin to consent." The prosecutor disagreed, claiming the two concepts are not the same. The prosecutor also pointed out the term consent does not appear in section 11411(c). In the end, the court declined to give CALJIC No. 1.23 and instead instructed that the cross burning simply had to be conducted "without authorization."

Both parties argued this issue to the jury. While the prosecutor claimed Jarod "can't give authorization to commit this crime," defense counsel argued there was nothing in the statute which prohibited him from doing so. He argued, "15 year olds can't do a number of things. They can't drive cars and things like that. But one thing they can do is consent to the exercise of . . . First Amendment rights. That's why this statute is crafted like this. That's why this law addresses this."

Picking up on this theme, Carr asserts on appeal that Jarod was legally entitled to authorize the cross burning because section 11411(c) "contains no language limiting the means by which or persons from whom authorization may be obtained." It is true there are no express limitations on the term authorization in the statute. However, that does not mean, as Carr maintains, that the Legislature intended the term to have a broad and limitless meaning.

Section 11411(c) was enacted to ensure that "every person regardless of race, color, creed, religion, gender, or national origin, [is] secure and protected from fear, intimidation, and physical harm caused by the activities of violent groups and individuals." (§ 11410.) Particularly, the statute was designed to curtail expressive conduct which conveys the message of racial hatred. (*In re Steven S.* (1994) 25 Cal.App.4th 598 [31 Cal.Rptr.2d 644] [upholding constitutionality of the statute].)

Obviously, these objectives are best achieved by placing some limitations on the term authorization. For if anyone, for any reason, could authorize a cross burning on another's property, citizens would not be safe from the terror this act induces. The question becomes where to draw the line in terms of deciding the circumstances under which authorization may be given.

---

[2]The instruction states, "To consent to an act or transaction, a person (1) must act freely and voluntarily and not under the influence of threats, force or duress; (2) must have knowledge of the true nature of the act or transaction involved; and (3) must possess the mental capacity to make an intelligent choice whether or not to do something proposed by another person. [¶] [Merely being passive does not amount to consent.] Consent requires a free will and positive cooperation in act or attitude."

In deciding this issue, it is important to consider that the law has traditionally viewed the defense of consent in very restrictive terms.[3] In fact, consent is not a defense to most crimes. (See 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Defenses, §§ 257-258, pp. 294-296; 1 LaFave & Scott, Substantive Criminal Law (1986) Justification and Excuse, § 5.11, pp. 687-688.) An exception is made when consent negates an element of the charged offense. (*Ibid.*) However, even in these instances, permission for the alleged criminal act must be obtained from *the victim.* (*Ibid.*) Carr does not cite any cases in which consent from a third party has constituted a valid defense to a crime.

Instead, Carr directs our attention to cases arising under the Fourth Amendment. He notes that in certain circumstances, third parties, even teenagers, can consent to the search of another's property. (See, e.g., *People v. Hoxter* (1999) 75 Cal.App.4th 406 [89 Cal.Rptr.2d 259].) But consenting to a search and consenting to a crime are not the same, particularly in the context of third party consent. When a third party consents to a search of another person's property, it allows the police to transgress that person's privacy in order to look for evidence of a crime. But when a third party consents to a criminal act against another person, the victim may be subjected to great harm. While society may be willing to accept the idea that a person might empower someone to exercise control over another's property, we see nothing to suggest it is ready for the idea that anyone can ever empower a person to victimize someone else. Where, as here, it is clear that the party ostensibly consenting was aware of the criminal act intended, we would not have thought such "authorization" could be seriously argued.

Such an argument was put forth in *Gonzales v. State* (Tex.Crim.App. 1996) 931 S.W.2d 574. The defendant there was convicted of capital murder for committing a killing in the course of a burglary. On appeal, he claimed there was insufficient evidence to support the burglary finding because the murder victim's teenage daughter, a coconspirator in the killing, had given him permission to enter the victim's house. In other words, he argued the daughter's consent vitiated a necessary element for burglary. The court was not persuaded. Because the daughter was aware of the defendant's illegal purpose in entering the house, the court found she was unable to give valid consent to the entry. (*Id.* at pp. 575-576; see also *Fotopoulos v. State* (Fla. 1992) 608 So.2d 784, 793 [homeowner's son lacked authority to consent to entry by his coconspirator for the purpose of committing murder]; *State v. Upchurch* (1992) 332 N.C. 439 [421 S.E.2d 577, 587-588] [same].)

In the present case, Jarod was likewise aware of the perpetrators' illegal intent. In fact, the gravamen of the defense was that he suggested the cross

---

[3]For argument's sake, we accept Carr's assumption that authorization and consent are functionally equivalent terms for purposes of analyzing section 11411(c).

burning to Yates as an act of rebellion against his parents. Jarod was not concerned with the First Amendment or freedom of speech. He simply wanted to terrorize his parents by subjecting them to a pernicious symbol of religious hatred and intolerance. This, of course, is the very harm section 11411(c) was designed to prevent.

We therefore find, as a matter of law, that Jarod was not legally entitled to authorize the cross burning on his parents' property. Accordingly, the court did not err in refusing Carr's consent instruction, and the prosecutor did not misstate the law in closing argument by asserting Jarod lacked authority to permit the cross burning.[4]

## II

■ Carr also sought to defend the cross burning charge on the grounds of voluntary intoxication. However, finding section 11411(c) requires only general intent, the court excluded Carr's proffered expert testimony on the physiological and mental effects of drinking. We uphold the court's ruling.

Pursuant to section 22, subdivision (a), evidence of voluntary intoxication is not admissible to negate the capacity to form the mental state required for the charged offense. However, subdivision (b) of that section allows evidence of voluntary intoxication "on the issue of whether or not the defendant actually formed a *required specific intent . . . .*" (Italics added.) Section 22 reflects " 'the common law approach of permitting voluntary intoxication as a defense to "specific intent offenses" and barring it as a defense to "general intent offenses." ' [Citation.]" (*People v. Whitfield* (1994) 7 Cal.4th 437, 451 [27 Cal.Rptr.2d 858, 868 P.2d 272]; see also *People v. Mendoza* (1998) 18 Cal.4th 1114, 1128 [77 Cal.Rptr.2d 428, 959 P.2d 735] [recognizing continued validity of this approach].)

To violate section 11411(c), the defendant must act for the purpose of terrorizing the victim or in reckless disregard of that risk. Typically, when a crime requires mere recklessness, it will be characterized as a general intent offense. (See Black's Law Dict. (7th ed. 1999) p. 813, col. 2 [general intent

---

[4]While we uphold the substance of the prosecutor's remarks, we note that one of them was phrased inappropriately. In defending her decision to stipulate to the fact that Jarod suggested the cross burning, the prosecutor stated to the jury, "Do you think that in representing my client when we entered into that stipulation that Jared Shostak made those remarks to those other individuals, that somehow that would jeopardize—I would purposely in representing my client jeopardize that element?" As the Attorney General concedes, the prosecutor's motive for entering into the stipulation was irrelevant and outside the scope of the evidence. However, the comment was not prejudicial because, as we have explained, Jarod was legally unable to authorize the cross burning.

crimes usually take the form of recklessness or negligence]; see, e.g., *People v. Bohmer* (1975) 46 Cal.App.3d 185, 192 [120 Cal.Rptr. 136] [reckless possession of explosives is a general intent crime].) However, Carr insists section 11411(c) is different because it governs conduct that relates to expressive behavior. He asserts the statute, "like all other hate crime statutes, must require specific intent as to every defendant in order to be constitutional."[5]

In support of this position, Carr relies on *In re M.S.* (1995) 10 Cal.4th 698 [42 Cal.Rptr.2d 355, 896 P.2d 1365]. There, our Supreme Court analyzed sections 422.6 and 422.7. Section 422.6 makes it a crime to "willfully" interfere with another person in the exercise of legal rights. Section 422.7 criminalizes the commission of certain acts "for the purpose of" interfering with another person's exercise of legal rights. In rejecting the claim that these provisions are overbroad and vague, the court interpreted them as requiring proof of a "specific intent to interfere with a person's right protected under state or federal law." (10 Cal.4th at p. 713, fn. omitted.) However, this interpretation was mandated not by the Constitution, but merely by principles of statutory construction.

The court found section 422.6 requires specific intent because it was modeled after federal and Massachusetts laws that have been construed as specific intent offenses. (*In re M.S., supra,* 10 Cal.4th at p. 713.) And the court found section 422.7 requires specific intent because it contemplates the purposeful infringement of another's rights. (10 Cal.4th at p. 713.) Although noting the requirement of specific intent "helps to protect against unconstitutional application to protected speech" (*ibid.*), the court was clear that this requirement was not constitutionally compelled. (*Id.* at p. 713, fn. 5.) Therefore, the court's decision does not support Carr's broad assertion that all hate crimes must require specific intent to pass constitutional muster.[6]

Carr also draws our attention to the court's analysis in *In re Steven S., supra,* 25 Cal.App.4th 598. In that case, the minor argued the terms "desecrates" and "religious symbol" in section 11411(c) are unconstitutionally vague. The court acknowledged the terms are abstract and subjective, but it determined, "The statute also requires specific mental states, bringing it back from the precipice of unconstitutional vagueness: the offender must *know* that the desecrated object is a religious symbol, and must have acted for the

---

[5]Because Carr raised this claim for the first time at oral argument, we invited supplemental briefing on the issue.

[6]From the standpoint of statutory construction, *In re M.S.* is also unhelpful to Carr because, unlike the provisions discussed in that case, there is no evidence section 11411(c) was patterned after laws that have been interpreted as requiring specific intent, and the statute expressly provides that it can be violated with mere recklessness.

*purpose* of terrorizing or in *reckless disregard* of that risk. (§ 11411, subd. (c).) These elements clarify what is prohibited. The subjective requirement of knowledge demands that, however great the stretch toward religious symbolism, the offender is aware of it. To the offender who *knows* that an object is a religious symbol, the phrase cannot be vague. The requirement of purposeful or reckless terrorizing ensures against treatment of seemingly innocuous behavior as a desecration. An offender who has a purpose, or recklessly disregards a risk, of terrorizing . . . can have no doubt that the treatment of the religious symbol is desecrating and threatening." (25 Cal.App.4th at pp. 613-614.)

Contrary to Carr's belief, this passage does not prove section 11411(c) requires specific intent. The court did mention the law "requires specific mental states." However, this comment was not meant to describe the mens rea requirement of the statute. The context of the court's remarks makes clear the court was merely reiterating the obvious fact that section 11411(c) requires the defendant to harbor a particular frame of mind. Namely, the defendant must act for the purpose of terrorizing or in reckless disregard of that risk. The issue of whether section 11411(c) is a specific or general intent crime was simply not addressed by the *Steven S.* court.

The court did, however, thoroughly examine the concept of recklessness. It observed the concept appears throughout the Penal Code, including section 452, which prohibits the reckless burning of any structure, forest land or property. (*In re Steven S., supra*, 25 Cal.App.4th at p. 614.) The court noted that for purposes of that section, the Legislature has defined recklessness in a manner that mirrors the Model Penal Code's definition of the term. (*Id.* at pp. 614-615.)[7] In light of this, the court determined the word reckless has an established meaning under California law, and that further definition of the phrase "reckless disregard" in section 11411(c) was not required under the First Amendment. (25 Cal.App.4th at p. 615.)

The court's analysis is significant because it recognizes that recklessness is a well-developed concept under California law. In fact, the Legislature has

---

[7]In the context of section 452, " 'Recklessly' means a person is aware of and consciously disregards a substantial and unjustifiable risk that his or her act will set fire to, burn, or cause to burn a structure, forest land, or property. The risk shall be of such a nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." (§ 450, subd. (f).)

Under the Model Penal Code, "A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." (Model Pen. Code, § 2.02, subd. (2)(c).)

even spoken out on how intoxication affects reckless behavior. Under section 452, the unlawful burning statute mentioned above, intoxication is no defense to reckless conduct. (§ 450, subd. (f).) This is also the approach taken by Model Penal Code: "When recklessness establishes an element of the offense, if the actor, due to self-induced intoxication, is unaware of a risk of which he would have been aware had he been sober, such awareness is immaterial." (Model Pen. Code, § 2.08, subd. (2).) In other words, "if the only reason why the defendant does not realize the riskiness of his conduct is that he is too intoxicated to realize it, he is guilty of the recklessness which the crime requires." (1 LaFave & Scott, Substantive Criminal Law *supra*, Responsibility, § 4.10(c), at pp. 556-557.)

If intoxication is no defense to unlawful burning under section 452, we see no reason why it should be treated any differently for purposes of cross burning under section 11411(c). Both statutes require the mens rea of recklessness, and the Legislature has made clear that excessive drinking does not excuse reckless behavior. We therefore find that voluntary intoxication is no defense to the crime of cross burning, and that the trial court properly excluded Carr's proposed evidence on the effects of his drinking.[8]

The judgment is affirmed.

Sills, P. J., and O'Leary, J., concurred.

---

[8]Carr also submits reversal is mandated because it is impossible to tell from the jury's verdict whether it found that he purposely or recklessly terrorized the Shostaks. However, as the Attorney General correctly notes, Carr did not raise this claim in his opening brief, and it falls outside the scope of our order for supplemental briefing. Therefore, the contention is not properly before us. (Cf. *People v. Whitson* (1998) 17 Cal.4th 229, 244, fn. 4 [70 Cal.Rptr.2d 321, 949 P.2d 18] [court need not consider issues which are raised for the first time in petition for rehearing].)