THOMPSON, J.
Aaron Lee Cousin appeals his convictions for carjacking while armed with a dangerous weapon,[1] aggravated assault with a deadly weapon,[2] attempted felony murder,[3] and burglary of a dwelling with a battery.[4] We affirm because we conclude that the trial court did not abuse its discretion in consolidating the two cases against Cousin.
Dawn Simon, a cabdriver, testified that she drove Cousin and another male to two separate locations during the early morning of 16 June 2000. When they left the cab, they told her they had heard her call letters and would probably ask for her later. In the afternoon, Simon was dispatched to pick up a fare who had asked for her, and she recognized Cousin as the person she had driven earlier. She drove *578 him from that location to two others and then to a supermarket where, at about 2:00 p.m., Cousin put a knife to her side and ordered her from the cab. She ran from the cab and called the police as Cousin fled in the cab.
Later the same day, Jon Boone entered his home and turned to close the door behind him when he was struck from behind. A man was stabbing him and repeating that he was going to kill him. Boone struggled and managed to hold the man’s wrists, after which the man took Boone’s proffered money and car keys and sped away in Boone’s vehicle. Boone’s wife, on her way home at about 4:80 p.m., saw Boone’s vehicle pass her in the opposite direction. She could not describe the driver, but she knew it was not Boone. In the meantime, Boone, suffering a collapsed lung, made his way to neighbors who took him to the hospital and called the police. Boone had tried to call the police, but his telephone did not work. The police who responded to the call found Simon’s cab stuck up to its axles in sand in a wooded area near Boone’s house. Nearby was a knife smeared with blood whose DNA matched Boone’s. Obvious hand prints matching Cousin’s were found on the rear of the cab and suggested that he may have tried to push the cab out of the sand. Boone’s wife found a pair of shoes in the house which did not belong to any member of the household, and hair found in the shoes yielded DNA that matched Cousin’s DNA. Simon identified Cousin as the person who took the cab, and Boone identified Cousin as the attacker.
On appeal, Cousin argues that the trial court abused its discretion in allowing the state to consolidate the charges relating to Simon with the charges relating to Boone. Florida Rule of Criminal Procedure 3.150 provides that two or more offenses may be charged in the same information when the offenses “are based on the same act or transaction or on two or more connected acts or transactions.” Although convenience and the preservation of the courts’ valuable resources justify the consolidation of charges, practicality and efficiency cannot outweigh the defendant’s right to a fair trial. Crossley v. State, 596 So.2d 447, 449-450 (Fla.1992). The standard of review for cases involving the consolidation or severance of charges is abuse of discretion. Id.
We affirm on the authority of Fotopoulos v. State, 608 So.2d 784 (Fla.1992). There, the defendant threatened to kill a woman unless she killed a man named Ramsey. Id. at 786. Ramsey was led to believe he was being initiated into a club and was tied to a tree. Id. The woman shot and killed Ramsey as the defendant videotaped. Id. Later, according to the woman, the defendant used the videotape as leverage to insure that she would murder his wife. Id. Eventually, the defendant told the woman to hire someone to kill his wife, and the woman did so. The person who was hired entered the defendant’s residence and shot the wife in the head but failed to kill her. Id. After his wife was shot, the defendant shot and killed the hired killer. Id.
On appeal, the defendant contended that the trial court should have severed the charge of first degree murder for the Ramsey killing from the other counts, which included first degree murder, attempted first degree murder, solicitation to commit first degree murder, and conspiracy to commit first degree murder. The supreme court disagreed, holding that severance was not required because the offenses were “clearly connected in an episodic sense.” Id. at 790. Furthermore, the court held, even if there had been separate trials, evidence of each offense would have been admissible at the trial of *579 the other to show common scheme and motive, as well as the entire context out of which each criminal action occurred. Id.
In the instant case, as in Fotopoulos, there is more than a general temporal and geographic proximity linking the two sets of crimes because the first set of crimes helps explain the second set of crimes, and evidence of Cousin’s first set of crimes would have been admissible in a trial on the second set of crimes. See § 90.404(2), Fla. Stat. (“evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident”); Williams v. State, 110 So.2d 654 (Fla.1959). Here, the cab was found bogged down in the woods adjacent to the second crime scene, suggesting that Cousin either tried to flee through the woods and got stuck, or that he tried to hide the cab there. In either event, the cab’s proximity to the Boone residence is evidence that Cousin was near that crime scene, and the reason the cab tends to place Cousin at the second crime scene is that Simon testified that he stole it from her. Further, the first set of crimes gave Cousin a reason to flee and a motive for entering the Boone residence — either to hide or to lie in wait for a resident to return with a vehicle. Here, as in Fotopoulos, “one crime induced the other crime,” see Smithers v. State, 826 So.2d 916, 923 (Fla.2002), and therefore “a sufficient causal link existed to permit joinder,” id.
AFFIRMED.
PLEUS and TORPY, JJ., concur.

. § 812.133(2)(a), Fla. Stat.

. § 784.021(l)(a), Fla. Stat.

. § 782.04(l(a)(2), Fla. Stat.

. § 810.02(2)(a), Fla. Stat.