NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

DERRICK LEON WILLIAM KNOTT,           )
                                      )
              Appellant,              )
                                      )
v.                                    )     Case No. 2D13-4945
                                      )
STATE OF FLORIDA,                     )
                                      )
              Appellee.               )
                                      )
_____)

Opinion filed March 2, 2016.

Appeal from the Circuit Court for
Hillsborough County; Emmett Lamar
Battles, Judge.

Howard L. Dimmig, II, Public Defender,
and Joseph N. D'Achille, Jr., Special
Assistant Public Defender, Bartow, for
Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Gillian N. Leytham,
Assistant Attorney General, Tampa, for
Appellee.


ALTENBERND, Judge.

          Derrick Leon William Knott appeals his judgments and sentences for

several felonies.  We affirm and write primarily to address Mr. Knott's argument that the

State failed to prove that he committed kidnapping with the intent to "[i]nterfere with the

performance of any governmental or political function," as proscribed by section

787.01(1)(a)(4), Florida Statutes (2011). Although this provision of the kidnapping statute is rarely invoked, we conclude that the evidence, which showed that Mr. Knott commandeered a car and driver to flee from a law enforcement officer who was lawfully attempting to detain Mr. Knott, established a prima facie case of an intent to interfere with the performance of a governmental function.

Mr. Knott broke up with his girlfriend in February 2012. She apparently moved from his residence into the apartment of one of his female cousins. Thereafter, Mr. Knott allegedly entered his cousin's apartment through a window and choked his former girlfriend. He was not apprehended at that time although law enforcement was notified of the incident. Later that day, in the parking lot of the apartment complex, Mr. Knott approached a car that was occupied by the two women and allegedly choked his former girlfriend again.

A uniformed deputy, who was familiar with the alleged circumstances of the first incident and could identify Mr. Knott from a picture that had been provided to him as part of the earlier investigation, arrived at the scene of the later incident shortly after it occurred. The deputy observed Mr. Knott in a verbal argument with his former girlfriend. Mr. Knott looked at the deputy and ran. The deputy identified himself as law enforcement and shouted verbal commands to Mr. Knott, which Mr. Knott ignored. The deputy pursued him, but Mr. Knott climbed a wall and seemingly disappeared into thin air.

But magic was not involved. While the deputy was still on the other side of the wall, Mr. Knott entered a parked vehicle that was occupied by its driver. The driver testified that a shirtless man, later identified as Mr. Knott, jumped into his car.

When the driver attempted to get out of the car, Mr. Knott told him: "I wouldn't do that if I w[ere] you." Mr. Knott told the driver that people were shooting at him and instructed the driver to drive away. The driver did not know whether Mr. Knott was armed, but he was afraid and so he did as Mr. Knott instructed. After they traveled some distance, Mr. Knott exited the vehicle and ran away. The driver reported the incident to the police, and Mr. Knott was later apprehended.

Mr. Knott was charged with ten felonies and one misdemeanor for these events. At trial, the jury found him not guilty of seven of the offenses. For the events involving his former girlfriend, Mr. Knott was convicted only of a single domestic battery.[1] For running from the officer, he was convicted of obstructing or opposing an officer without violence.[2] But for jumping in the car and ordering the driver to drive away, he was convicted of both burglary of a conveyance with assault[3] and kidnapping with intent to interfere with a governmental or political function,[4] which are both first-degree felonies punishable by life. For the battery, he was sentenced to ten years' imprisonment as a habitual offender. For the burglary and kidnapping, he was sentenced to concurrent terms of life imprisonment as a prison releasee reoffender.

On appeal, Mr. Knott first argues that the trial court erred in denying his motion to sever the burglary and kidnapping charges from the earlier offenses. He argues that "the aggregation" of all eleven offenses "unfairly diluted [his] defense that

---

[1]§ 784.03(2), Fla. Stat. (2011) (a third-degree felony).

[2]§ 843.02, Fla. Stat. (2011) (a first-degree misdemeanor).

[3]See § 810.02(1)(b)(1), (2)(a), Fla. Stat. (2011).

[4]See § 787.01(1)(a)(4).

the encounter" with the driver of the car "was consensual." He argues also that the earlier offenses were improperly joined with the burglary and kidnapping charges because they were temporally disconnected. The trial court's decision to deny the severance is reviewed for abuse of discretion. See Smithers v. State, 826 So. 2d 916, 923 (Fla. 2002) (citing Fotopoulos v. State, 608 So. 2d 784 (Fla. 1992)); see also Byrd v. State, 980 So. 2d 627 (Fla. 2d DCA 2008).

Given that the charged intent for the kidnapping involved interfering with the officer's efforts to make a lawful stop for the prior events, we cannot agree that the trial court abused its discretion in denying the motion. See Fla. R. Crim. P. 3.152(a)(1), (2); Fotopoulous, 608 So. 2d at 790 (explaining that severance is not required under rule 3.152(a)(1) when offenses are "connected in an episodic sense" and that severance is not necessary to promote a fair determination of guilt or innocence under rule 3.152(a)(2) when "evidence of each offense would have been admissible at the trial of the other to show . . . the entire context out of which the criminal action occurred"). As a practical matter, to the extent that Mr. Knott was concerned that the kidnapping charge would prevent him from obtaining a fair trial on the charges for the earlier events, the jury's seven acquittals seem to belie that concern.

Mr. Knott's remaining argument is that the trial court erred in denying his motion for judgment of acquittal for kidnapping because the State failed to prove that Mr. Knott intended to "[i]nterfere with the performance of any governmental or political function," which is an element of section 787.01(1)(a)(4). Mr. Knott does not challenge the conviction for burglary. Although he seeks an acquittal on the charge of kidnapping, at best he would be entitled to a conviction for the lesser offense of false imprisonment.

See § 787.02(1)(a), Fla. Stat. (2011); see also State v. Sanborn, 533 So. 2d 1169, 1169-70 (Fla. 1988); Stanley v. State, 112 So. 3d 718, 720 (Fla. 2d DCA 2013).

The dispositive issue in this case is whether a suspect's intentional imprisonment of the driver of a vehicle to flee from a law enforcement officer involves an intent to interfere with "any governmental function" when the officer has lawful authority to detain the suspect. Mr. Knott argues both that the statute does not apply to his conduct and that the statute is ambiguous. Mr. Knott primarily argues that this provision in the kidnapping statute is intended to protect elected officials and politicians running for office from kidnapping and acts of terrorism. He accurately claims that he did nothing more to the officer than show him "his backside."

But implicit in Mr. Knott's argument is a requirement that the governmental employee or politician be the victim in the offense. In this case, the driver of the car was the victim. The statute does not transform a false imprisonment into a kidnapping if the victim is a politician; under the express language of the statute, the transformation occurs upon proof that the defendant intended to interfere with "the performance of any governmental or political function." See § 787.01(1)(a)(4) (emphasis added).

Admittedly, there are many functions performed by government. Some are vital to our society and others are far more mundane. For example, it seems unlikely that a person runs a serious risk of being falsely imprisoned by a person set on delaying the street sweeper. But without regard to the importance or insignificance of the function, the plain language of this statute applies to people who falsely imprison others with the intent to interfere with "any governmental function." On its face, the statute demonstrates a purpose to deter such imprisonments. One would expect such a

- 5 -

statute to protect victims who are innocent bystanders, as well as those who are politicians and governmental employees.  The specific intent required by this statute appears to be exactly the intent demonstrated by Mr. Knott.  He intended to interfere with a lawful detention.  The fact that it was his detention makes no difference.  There can be no serious question that a sworn law enforcement officer seeking to lawfully detain a person is involved in a governmental function.  See, e.g., Branzburg v. Hayes, 408 U.S. 665, 690 (1972) ("Fair and effective law enforcement aimed at providing security for the person and property of the individual is a fundamental function of government . . . ."); Graham v. Ramani, 383 So. 2d 634, 637 (Fla. 1980) ("[T]he functions of police . . . are fundamental obligations of a government to its constituency." (citing Foley v. Connelie, 435 U.S. 291 (1978))).  The statute read in context presents no ambiguity to construe in Mr. Knott's favor.

This statute was first enacted in 1974 as part of the Florida Criminal Code and has its origins in section 212.1 of the Model Penal Code.  See ch. 74-383, § 22, at 1238, Laws of Fla.; Model Penal Code § 212.1 (Am. Law. Inst. 1962); see also Graham v. State, 169 So. 3d 123, 131 n.10 (Fla. 3d DCA 2015) (Emas, J., concurring in part and dissenting in part).[5]  In the last forty years, kidnapping with this particular intent has generated very little case law in Florida or elsewhere.

Graham is the only prior case in Florida that we have located that discusses kidnapping with the intent to interfere with the performance of any

_____

[5]Footnote 10 in Graham explains that this version of the kidnapping statute was enacted in 1974 and was modeled after the Model Penal Code.  The footnote includes a citation to chapter 74-283, Laws of Florida, which no doubt was meant to be a citation to chapter 74-383, Laws of Florida.

governmental or political function. Graham was a high-profile case involving rather complex facts. Rilya Wilson was a four-year-old child in foster care. Graham, 169 So. 3d at 124. The Department of Children and Families placed this child with a same-sex couple. Id. at 125. In 2000, DCF could not place such a child in the legal custody of both women and the child was legally placed with Pamela Graham, although the child lived with both women. See id. The child was later abused and allegedly murdered by the other woman, Geralyn Graham. Id. at 125-27. As part of this episode, the State alleged that Geralyn Graham kidnapped the child, who was under the protective supervision of DCF, and thus interfered with DCF's "statutory function of protecting children who are in temporary custody." Id. at 128.

The majority opinion in Graham took a "plain meaning" approach when analyzing the statute's application to the kidnapping of the child and affirming the kidnapping conviction. Id. at 128-29. Judge Emas dissented to this portion of the majority's decision, arguing that the statute was ambiguous. Id. at 130-31 (Emas, J., concurring in part and dissenting in part). Judge Emas maintained that the history and source of this legislation should be examined to determine the scope of the statute. See id.

Whether this statute was intended to cover functions performed by foster parents, who seem to be volunteer or low-paid independent contractors for the State, and whether the partner's actions in Graham actually evinced an intent to interfere with a governmental function are very close questions. In that context, Judge Emas makes a strong argument that the statute may be ambiguous.

But the government agent in this case is a uniformed law enforcement officer who had clear legal authority to detain, and probably to arrest, Mr. Knott. The officer was performing this function when Mr. Knott decided to commandeer the private car and driver in order to impede this function. We simply see no ambiguity in the phrase "any governmental function" when applied in this context. The application of the statute to this set of facts may be an application that was not envisioned by its drafters many years ago, but over the lifetime of a statute it is not uncommon for a statute to apply beyond the narrower problem that its drafters sought to address. We have no authority to limit this statute to a narrower set of cases when, by its language, it plainly applies to this case.

Affirmed.

CRENSHAW and BLACK, JJ., Concur.