588 So.2d 225 (1991)
Roosevelt BOWDEN, Appellant,
v.
STATE of Florida, Appellee.
No. 74438.
Supreme Court of Florida.
September 12, 1991.
Rehearing Denied November 19, 1991.
*226 James Marion Moorman, Public Defender and Robert F. Moeller, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Candance M. Sunderland, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Roosevelt Bowden appeals his conviction of first-degree murder and sentence of death. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and affirm both the conviction and sentence.
Bowden was convicted of the 1988 first-degree murder of Charles Littlefield. According to testimony at trial, Bowden had been staying off and on and eating meals at the victim's apartment. Littlefield's wife and sister-in-law, who also lived in the apartment and who were present the night of the murder, testified at trial.
According to Littlefield's wife's testimony, on the night of the murder, Bowden went to Littlefield's apartment with a friend, the friend's wife and daughter. Bowden and his friends then left the apartment to go out for dinner. When Bowden returned to the apartment to freshen up around 11 p.m., he and Littlefield got into an argument and Littlefield began throwing things. The argument began upstairs and continued downstairs, until Bowden restrained Littlefield by grabbing him by the throat and holding him down on the couch. When Littlefield slapped Bowden, Bowden let him go. Once released, Littlefield began throwing things again, so Bowden picked him up by the chin and held him against the wall with his feet off the floor. When Littlefield's wife, Rita, told Bowden not to hurt Littlefield, Bowden put him down.
Littlefield, who had been drinking, then grabbed another beer from the refrigerator and left the apartment through the kitchen door. Bowden left the apartment soon after Littlefield, to allegedly find him and calm him down. According to Littlefield's sister-in-law, Bowden returned to the apartment within twenty minutes. Upon his return, Bowden told Rita that Littlefield had *227 said, "`F____k you all,'" and left, throwing his keys behind him. Bowden also told the sisters he had looked for Littlefield in a couple of clubs but had been unable to find him. According to the sisters, there was no blood on Bowden when he returned and he did not take a shower or change clothes at the apartment. However, he did make statements about a dead body, such as it weighs a lot and the skin feels like leather.
At 2:30 a.m. Bowden and Rita went to look for Littlefield. Rita wanted to look near a smashed up abandoned truck in a wooded area not far from the apartment; but Bowden discouraged her from going into the area by telling her that there were "drugs over thataway." After looking several places, they were unable to find Littlefield and returned to the apartment. According to Rita's sister, after they returned Bowden told Rita that he would take care of her if her husband did not return. Bowden stayed at the apartment until he left for work the next morning.
Around noon the next day, Littlefield's body was found in a vacant lot near the wooded area Bowden had discouraged Rita from entering the night before. According to the medical examiner, Littlefield died some time between midnight and 2 a.m. Littlefield had been beaten in the head repeatedly. Although the murder weapon was never found, the medical examiner testified that the victim's wounds were consistent with having been caused by a steel rod known as a "rebar." She also testified that the body was covered with drying blood and there were defensive wounds on the arms and hands. According to her testimony, the first attack had occurred in a parking lot near the vacant lot where the body was found. Littlefield was then dragged by the shoulders to a wooded area near the edge of the parking lot, beaten again, and then dragged by the feet to the location where the body was found. The medical examiner also testified that blood was splattered in the two areas where the beatings occurred and the assailant also would have been splattered with blood.
After speaking to the victim's wife and sister-in-law, the police arrested Bowden and charged him with the murder. Bowden made several statements to police but denied killing Littlefield. Three butane lighters later identified as belonging to the victim and entered into evidence were taken from Bowden's property at the jail. There was also testimony from Rita and her sister that Littlefield left the apartment with fourteen dollars and Bowden had that amount on him after he returned from looking for Littlefield.
Two of Bowden's cellmate's testified at trial. The first testified Bowden told him that he had a fight with a white guy. The white guy ran out of the house, and Bowden ran after him. Bowden caught up with him in the parking lot and they argued. The white guy told Bowden "f____k you." Bowden also told the cellmate that the police were a "dumb set of cops" who would never find out who committed the murder or what the murder weapon was. The second cellmate testified Bowden told him that he had a fight with this guy he was living with. After the fight, the guy left the house and Bowden followed him and beat him using a "rebar" and took $1,100.
Prior to Bowden's statement to his cellmate that he used a rebar to beat the victim, the medical examiner had been unable to ascertain the nature of the murder weapon. However, the medical examiner testified that once she was given a rebar to examine, she determined that a rebar slightly different than the one she had been shown and the one entered into evidence was consistent with having caused the victim's wounds.
Bowden, who testified during both the guilt and sentencing phases of the trial, denied catching up with Littlefield in the parking lot, denied killing him, denied discussing the murder with his cellmates, and denied making statements about a dead body. During the guilt phase, Bowden also presented the testimony of an expert in forensic serology that the expert had examined a number of items taken from Bowden, including the shirt Bowden was wearing the night of the murder, but failed to detect the presence of blood on any of the items.
*228 During the penalty phase of the trial, Bowden testified concerning his background, explaining his deprived childhood and adolescence. He also acknowledged a 1978 Connecticut manslaughter conviction for the stabbing of his twenty-two month old daughter and explained the circumstances surrounding that killing. After the state completed its penalty phase cross-examination of Bowden, he was allowed to address the jury. Bowden again denied killing Littlefield and told the jury that he had been prejudiced by his past manslaughter conviction.
The jury found Bowden guilty and recommended that he be sentenced to death. Prior to sentencing by the trial court, Bowden was allowed to address the court. Bowden stated for the first time that he in fact had witnessed Littlefield's murder. The court found this claim to be "totally unbelievable" in light of the fact that Bowden testified at length in his own defense during the course of the trial without ever mentioning the fact that he actually witnessed the murder.
The trial court found in aggravation that Bowden had previously been convicted of a violent felony and that the murder was especially heinous, atrocious, or cruel. The court accepted as a nonstatutory mitigating factor the fact that Bowden was "the product of a terrible childhood and adolescence." Consistent with the jury's recommendation, Bowden was sentenced to death.
Bowden appeals his conviction and sentence. He raises seven claims[1] in this appeal, five of which merit brief discussion.

GUILT PHASE
As his first claim, Bowden, who is black, maintains that the state was allowed to peremptorily strike the sole black venire member available for service on his jury without first giving legitimate, race-neutral, record-supported, reasons for the challenge, as required by this Court's decisions in State v. Neil, 457 So.2d 481 (Fla. 1984), clarified, State v. Castillo, 486 So.2d 565 (Fla. 1986), and clarified, State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988). When the prospective juror in question was challenged, defense counsel pointed out that the juror was "the only black that's up there" and requested a Neil inquiry into the state's reasons for the challenge. The court responded by noting that "no kind of pattern has been established at this point. [However,] I think it would be safer, for the purposes of the record, if the State would make an announcement as to what the basis would be." The prosecutor gave as reasons for the challenge that the juror was young, she was a woman, and she had "indicated that a relative or family member was accused of a crime." The trial court ruled that at that time there was "no basis ... to find it's a racially motivated challenge."
It is clear that a pattern of striking black venire members need not be demonstrated before a trial court's duty to conduct an inquiry into the State's reasons for the excusal of a minority member is triggered. Reynolds v. State, 576 So.2d 1300 (Fla. 1991). Bowden is correct that by pointing out that the only black venire member had been excused and requesting a Neil inquiry the defense met its initial burden of establishing a strong likelihood that *229 the black venire member was excused because of race, thus shifting the burden to the state to justify the excusal. As we recently held in Reynolds, 576 So.2d at 1302, "[t]he act of eliminating all minority venire members, even if their number totals only one, shifts the burden to the state to justify the excusal upon a proper defense motion."
Although the fact that a juror has a relative who has been charged with a crime is a race-neutral reason for excusing that juror, Bowden complains that this reason is not supported by the record. The state counters that the information concerning the juror's relative was gleaned from the jury questionnaire. We are unable to determine whether such information was contained in the questionnaire because the jury questionnaires were not made a part of the record. However, we find that, because defense counsel failed to object to the reasons given for the excusal, the Neil issue has been waived. See Floyd v. State, 569 So.2d 1225, 1230 (Fla. 1990) (where defense counsel failed to object to the state's explanation for excusal of black juror, the issue was not properly preserved for review), cert. denied, ___ U.S. ___, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991).
We also reject Bowden's next claim that the trial court erred 1) by failing to conduct adequate inquiry into his dissatisfaction with his court-appointed counsel and 2) by ignoring his alleged requests to represent himself. Bowden claims that on three separate occasions he expressed dissatisfaction with his court-appointed counsel and sought to represent himself. The first was in a letter to the clerk of the court in which Bowden demanded a speedy trial and stated that if his lawyer did not wish to go forward he would like to represent himself. The second was at a later hearing on court-appointed counsel's motion to withdraw. The third occurred when Bowden asked that new counsel be appointed prior to sentencing.
First, because the alleged requests for self-representation were at best equivocal, Bowden was not entitled to an inquiry on the subject of self-representation under Faretta v. California, 422 U.S. 806, 835-36, 95 S.Ct. 2525, 2541-42, 45 L.Ed.2d 562 (1975), and the trial court did not err in failing to allow Bowden to represent himself. See Hardwick v. State, 521 So.2d 1071, 1073, cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988).
We also reject Bowden's claim that the trial court erred by failing to conduct an adequate inquiry in connection with his request to discharge his court-appointed counsel under this Court's decision in Hardwick.[2] Where a defendant seeks to discharge court-appointed counsel due to alleged incompetency of counsel it is incumbent upon the trial court to make a sufficient inquiry of the defendant and his appointed counsel to determine whether there is reasonable cause to believe that counsel is not rendering effective assistance to the defendant. 521 So.2d at 1074. Under the circumstances present in this case, the trial court's inquiry was clearly adequate.
During the hearing on counsel's motion to withdraw that was made prior to trial, Bowden's court-appointed counsel informed the court that there had been "a breakdown in communication" and that "Mr. Bowden refuses to discuss the facts of the case with us as to what his testimony would be if he took the stand at trial." He also informed the court that Bowden accused counsel of "being in league with the State against him," that Bowden had "no faith in [counsel's] representation," and that he did not want counsel to represent him any longer. Bowden agreed with the latter representations. When asked by the court whom he wanted to represent him, Bowden responded
I haven't communicated with [counsel] pertaining to my case. They come to me and talk about some penalty phase of my trial, nothing else but the penalty phase of my trial, nothing about being in here, and nothing about what I have been charged with.

*230 They want to know about my mother and father.
I'm the one on trial here, Your Honor. I'm the one being accused here.
Counsel then stated that he and co-counsel
have been over to the jail three times to talk to Mr. Bowden, to talk about the facts of the case. He refused to talk about preparing for the penalty phase. He doesn't want to help us in that regard. We feel we are just ill-prepared to represent him if he won't cooperate.
At that point the trial court stated that Bowden had indicated he wanted his former attorney back and Bowden agreed that he did. The court then pointed out that Bowden's former attorney had withdrawn after also "complaining about not getting any cooperation from the Defendant." The trial court then asked Bowden "do you feel like you can handle your trial by yourself, Mr. Bowden?" Bowden again was unresponsive, stating that he had been in contact with a "paid lawyer from the street" who was supposed to be coming to see him that day. Bowden ultimately told the court he was going to try to hire a new lawyer. After discussion of tangential matters with the state and defense counsel, the court told Bowden
you've got two lawyers that are as good as any two lawyers anywhere.
I don't know whether you know that or not, but I know that because they appear before me all the time.
I don't know who you think you are going to get, but you can bet they will not be as good as these two guys that are here working on this job.
I'm not going to let them withdraw. I'll give you ten days to get yourself a lawyer. If you don't get one by then, you sure better start cooperating with these two lawyers that you have got.
Do exactly what they say. If you don't like the way they prepare for trial, that is not your business.
... .
Your motion at this time is denied without prejudice to make it again in ten days.
The above inquiry was sufficient to support the conclusion that there was no reasonable basis for a finding of ineffective representation. It is apparent from the record that any problems with the representation were caused by Bowden's refusal to cooperate with counsel.
We also find that the trial court did not err by failing to inquire into Bowden's request to discharge counsel that was made prior to sentencing. In connection with this request, Bowden was merely expressing his dissatisfaction with counsel's performance during the trial and reiterating his belief that counsel should have been allowed to withdraw prior to trial.
Bowden's next claim arises in connection with the trial court's refusal to allow him to "say something to the courtroom" after the completion of the state's cross-examination of him during the guilt phase of the trial. We cannot agree that Bowden's right to testify in his own defense was improperly limited by this refusal. While it is true that a criminal defendant has a right to testify in his or her own defense under both the United States[3] and Florida[4] Constitutions, "[t]he right `may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" Rock v. Arkansas, 483 U.S. 44, 55, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37 (1987) (quoting Chambers v. Mississippi, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045-46, 35 L.Ed.2d 297 (1973)).
In this case, Bowden took the stand in his own defense and testified in great detail during direct examination by defense counsel and during cross-examination by the State. There has been no suggestion that Bowden was precluded from presenting testimony that was material and favorable to his defense. See Rock, 483 U.S. at *231 55, 107 S.Ct. at 2711 (a procedural or evidentiary rule may not be applied in a manner which results in the arbitrary exclusion of material portions of a defendant's testimony); United States v. Valenzuela-Bernal, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982) (defendant cannot be arbitrarily deprived of testimony that is material and favorable to the defense). In fact, when Bowden was later allowed to address the jury during the penalty phase of the trial, nothing material to the issue of guilt was presented to the jury.
Our rejection of this claim is not intended to sanction a mechanical per se rule precluding a defendant from addressing the jury when his or her counsel declines to offer further testimony from the defendant.[5] However, under the circumstances of this case, it was clearly within the trial court's discretion to refuse Bowden's request and this refusal in no way compromised Bowden's constitutional rights.
The sufficiency of the evidence has not been challenged. However, our review of the record reveals that there was sufficient evidence to support Bowden's conviction of first-degree murder. Accordingly, finding no reversible error during the guilt phase of the trial, we affirm Bowden's conviction.

PENALTY PHASE
In connection with the penalty phase of the trial, Bowden maintains that it was error to instruct the jury it could consider the aggravating circumstance that the homicide was committed during a robbery because the evidence did not support such a finding, as evidenced by the trial court's rejection of the circumstance. The fact that the state did not prove this aggravating factor to the trial court's satisfaction does not require a conclusion that there was insufficient evidence of a robbery to allow the jury to consider the factor. Where, as here, evidence of a mitigating or aggravating factor has been presented to the jury, an instruction on the factor is required. Stewart v. State, 558 So.2d 416, 420 (Fla. 1990). As we have previously noted,
[i]f the advisory function [of the jury] were to be limited initially because the jury could only consider those mitigating and aggravating circumstances which the trial judge decided to be appropriate in a particular case, the statutory scheme would be distorted. The jury's advice would be preconditioned by the judge's view of what they were allowed to know.
558 So.2d at 421 (emphasis deleted) (quoting Floyd v. State, 497 So.2d 1211, 1215 (Fla. 1986)).
Finally, we also reject Bowden's claim that in finding that he had previously been convicted of a violent felony, the trial court improperly considered convictions not proven beyond a reasonable doubt. Even assuming that the other convictions for violent felonies mentioned in the trial court's sentencing order were not proven beyond a reasonable doubt, it is clear from the sentencing order that the trial court found "the brutal slaying of [Bowden's] own infant daughter is sufficient, in and of itself, to support" this factor. Further, there is no reasonable possibility that consideration of these convictions affected Bowden's sentence. Therefore, any alleged error was clearly harmless beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Accordingly, finding no reversible error, the conviction and sentence of death are affirmed.
It is so ordered.
*232 OVERTON, McDONALD, GRIMES and HARDING, JJ., concur.
BARKETT, J., concurs with conviction, but concurs in result only with sentence.
KOGAN, J., dissents with an opinion, in which SHAW, C.J., concurs.
KOGAN, Justice, dissenting.
I respectfully dissent. I would reverse Bowden's conviction and sentence and remand because I believe Bowden is entitled to a new trial due to the trial court's failure to conduct an adequate inquiry in connection with Bowden's request to discharge counsel.
The majority correctly notes that under this Court's decision in Hardwick v. State, 521 So.2d 1071, 1074-75 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988), if incompetency of counsel is assigned by the defendant as the reason for a motion to discharge court-appointed counsel, the trial court must make a sufficient inquiry of the defendant and his counsel to determine whether there is reasonable cause to believe that counsel is not rendering effective assistance to the defendant. However, I cannot agree that an adequate inquiry was conducted in this case.
At the hearing on counsel's motion to withdraw, Bowden agreed that he wanted to discharge counsel because he believed they were "in league with the state against him" and that he had "no faith in [their] representation." It is unclear why Bowden believed counsel was in league with the state because the court made no inquiry into this matter. However, it would appear from the record that Bowden's loss of confidence in counsel's representation was based on the fact that Bowden felt that counsel only wanted to talk about the penalty phase of his trial, "nothing about what [he had] been charged with." There was no further inquiry into Bowden's obvious concern that counsel were ignoring the guilt phase of his trial and focusing all their attention on the penalty phase.
It appears from the record that the trial court failed to recognize the fact that Bowden was challenging counsel's competence in connection with guilt phase representation. Therefore, the trial court totally failed to flesh out Bowden's concerns in connection with that portion of the representation and also failed to inquire of counsel concerning guilt phase preparation. The exchange which occurred between the trial court and Bowden and his counsel (quoted in the majority opinion at pages 10-11) is legally inadequate under Hardwick. Further, the court failed to make the requisite finding as to whether there was a reasonable basis for Bowden's belief that counsel was not rendering effective assistance. Hardwick, 521 So.2d at 1074 (after inquiry of defendant and counsel, court must make finding on the record as to whether there is reasonable cause to believe that counsel is not rendering effective assistance).
There are two aspects of this case that cause me to be particularly troubled by the trial court's failure to comply with the requirements of Hardwick. First, although I agree with the majority that there is sufficient evidence to support the jury's verdict, I must point out that even the trial court expressed concern about lingering doubt in light of the fact that the medical examiner testified that the assailant would have been covered with blood and there was evidence that Bowden was not. Moreover, prior to sentencing, Bowden again asked for another attorney to be appointed and expressed his dissatisfaction with counsel's representation during the trial, insisting that his witnesses had not been called.
As I read this record, we are presented with a defendant who questioned counsel's competency prior to trial, who protested his innocence throughout his trial, who was convicted despite the fact there may be some doubt as to his guilt, and who, after the trial, claimed there were witnesses who were not called in his defense. In my opinion, confidence in the verdict has been undermined by the trial court's failure to conduct an adequate inquiry into Bowden's fear that he was receiving ineffective assistance of counsel in connection with the guilt phase of this trial. Therefore, I *233 would reverse the conviction and sentence and remand the cause for a new trial.
SHAW, C.J., concurs.
NOTES
[1] The seven claims are: 1) the state was allowed to peremptorily excuse the sole black venire member, in violation of State v. Neil, 457 So.2d 481 (Fla. 1984), clarified, State v. Castillo, 486 So.2d 565 (Fla. 1986), and clarified, State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988); 2) the trial court failed to adequately inquire into Bowden's dissatisfaction with counsel and improperly denied his right to represent himself; 3) Bowden's right to testify in his own defense was improperly limited; 4) the trial court erred by refusing to grant a mistrial or to give a curative instruction in connection with allegedly prejudicial testimony given by the victim's wife; 5) there was insufficient evidence to instruct the jury on the aggravating circumstance that the homicide was committed during a robbery; 6) in finding that Bowden had previously been convicted of a violent felony, the trial court considered convictions not proven beyond a reasonable doubt; and 7) the especially heinous, atrocious, or cruel aggravating circumstance is applied arbitrarily and fails to limit the class of persons eligible for the death penalty.
[2] We note Bowden does not suggest that denial of his requests to discharge counsel deprived him of effective assistance of counsel or otherwise prejudiced him.
[3] See Rock v. Arkansas, 483 U.S. 44, 51-53, 107 S.Ct. 2704, 2708-10, 97 L.Ed.2d 37 (1987) (criminal defendant has right to testify in his or her own behalf under due process clause of the fourteenth amendment, compulsory process clause of sixth amendment, and fifth amendment privilege against self-incrimination).
[4] Article I, section 16, Florida Constitution.
[5] We encourage trial courts presented with a request by a defendant to address the jury without benefit of examination by counsel, first, to allow the defendant to confer with counsel. If, after conferring with counsel, the defendant still wishes to address the jury, the court should allow the defendant to proffer the testimony he or she wishes to present outside the presence of the jury. After the proffer, the court should make a determination as to whether the proffered testimony is material to the defense. If the court finds that the testimony is material, and not otherwise inadmissible, the defendant should be allowed to address the jury. Such a procedure will ensure that a defendant's right to testify in his or her own behalf is not compromised by counsel's decision not to elicit further testimony and will provide a record for appellate review.