ANSTEAD, Senior Justice,
concurring in part and dissenting in part.
I concur in the majority opinion in all respects except for its discussion of the prosecution’s strike of an African-American citizen from the jury panel. The record simply does not support the majority’s analysis and conclusion. There is nothing in the exchange between the prosecutor and the stricken juror that indicates any hesitancy whatsoever on the part of the juror to support the proper application of the death penalty.
In fact, when the prosecution chose to strike Mr. Jones, the African-American juror, the following colloquy took place:
Mr. DelaRionda (prosecutor): Your Honor, we strike juror number 26, Mr. Jones.
The Court: Give us a race neutral reason.
Mr. DelaRionda: Yes, sir. His feelings on the death penalty. He first stated that he wouldn’t give a number when asked by Mr. Block, I think it was.
Mr. Kuritz (defense counsel): My notes are opposite. He said yes to both on Mr. Jones.
The Court: You got any other reasons?
Mr. DelaRionda: No, sir, just his feelings about the death penalty.
The Court: I have a note that he agreed.
Mr. DelaRionda: I thought he said it depends.
Mr. Caliel: Your Honor, I believe he said — for the record, I believe he said he agreed with the two questions that were posed by Mr. DelaRionda except his initial impression about the death penalty when he was asked if he was for or against it he depends and also refused to give a numerical response to Mr. Block’s questions, and I believe his initial reaction on the word depend that would give us the challenge.
The Court: Well, at this point I would tentatively allow it because I know Ms. Hobbs is a black female and Mr. Ramsey is a black male and you haven’t moved to strike them so I will allow it for now and see what happens because I don’t believe there is a racial pattern if that’s your recollection. It may well be true. Mr. Kuritz.
(Emphasis added.) The discussion set out above indicates that the trial court correctly noted that the juror agreed with the legal application of the death penalty (“I have a note that he agreed.”), but the trial court incorrectly assumed that the defense must show a pattern of discrimination. Hence, the trial court essentially rejected the basis for challenge that the majority has attempted to construct in hindsight, and the trial court relied upon a misconception of the law (a pattern of discrimination), in validating the challenge. It is abundantly clear in our case law that a *1127 pattern of discrimination is not a condition precedent to the requirement that a party-give a race-neutral reason. See Bowden v. State, 588 So.2d 225, 228 (Fla.1991) (“It is clear that a pattern of striking black veni-re members need not be demonstrated before a trial court’s duty to conduct an inquiry into the State’s reasons for the excusal of a minority member is triggered.”); see also Abshire v. State, 642 So.2d 542, 544-45 (Fla.1994) (“The fact that several women were seated as jurors is of no moment, for as we have previously said ‘number alone is not dispositive, nor even the fact that a member of the minority in question has been seated as a juror or alternate.’ ”) (quoting State v. Slappy, 522 So.2d 18, 21 (Fla.1988)); State v. Johans, 613 So.2d 1319, 1321 (Fla.1993) (“A race-neutral justification for a peremptory challenge cannot be inferred merely from circumstances such as the composition of the venire of the jurors ultimately seated.”).
Rather than correcting the trial court’s misconception of the law, the majority attempts to make something out of Mr. Jones’ answers that are simply not there, i.e., opposition to the proper application of the death penalty. In fact, the record demonstrates that the questions the prosecutor asked regarding the death penalty were answered the same by Mr. Jones as such questions were answered by other jurors not stricken by the prosecution:
Mr. DelaRionda: Thank you. Mr. Clark, how do you feel about that, the first part? Could you sit as a juror and vote? If the State proves the evidence beyond a reasonable doubt that he is guilty could you vote guilty knowing that it could subject him to the death penalty?
The Prospective Juror: Yes.
Mr. DelaRionda: And in that second part if the aggravators and you hear the mitigators, if the aggravators outweigh the mitigators could you vote to recommend death?
The Prospective Juror: Yes.
[[Image here]]
Mr. DelaRionda: Okay. Mr. Jones?
The Prospective Juror: Yes to both.
As set out above, Mr. Jones’ answers were exactly the same as the other jurors not challenged by the State. In addition, the response that the majority now unfairly characterizes as “unintelligible” can more fairly be read as simply saying that consideration of the penalty will depend first on a determination of guilt or innocence. Hopefully, we would all agree with that good sense response. More importantly, however, the majority is unable to point to any place in the record to demonstrate that the trial court relied upon the majority’s flawed reassessment of the minority juror’s responses as a basis to approve the challenge.
QUINCE, C.J., and PARIENTE, J., concur.