PER CURIAM.
William Michael Kopsho was convicted of first-degree murder based on the October 27, 2000, shooting death of his wife, Lynne Ann Kopsho. Kopsho appeals his conviction of first-degree murder and sentence of death. We have mandatory jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons explained in more detail below, we affirm Kopsho’s conviction and sentence.
*209 FACTS AND PROCEDURAL HISTORY
Guilt Phase
Kopsho was initially tried by jury beginning February 23, 2005. The jury heard the story of Lynne’s murder primarily in Kopsho’s own words through a recording of his 911 call immediately after the shooting and a separate recording of his interview with Sergeant Jeff Owens of the Marion County Sheriffs Office. He was convicted and sentenced to death, but we overturned his conviction because the trial court committed reversible error in the denial of a challenge for cause of a potential juror, and remanded for a new trial. Kopsho v. State, 959 So.2d 168, 169 (Fla.2007).
The evidence presented at Kopsho’s second trial established that Kopsho met Lynne when she was seventeen years old. Lynne moved in with Kopsho when she was eighteen, and they were married on April 24, 1999, when Lynne was nineteen. The Kopshos both worked at Custom Window Systems, but during the summer or fall of 2000, Lynne moved back in with her father and stepmother.
On October 27, 2000, Kopsho shot Lynne after she fled his moving vehicle. Kopsho held witnesses and bystanders at bay until Lynne expired. Kopsho called 911 himself and confessed. He confessed again during his interview with the police after he turned himself over to authorities. Kop-sho explained that he killed Lynne because she told him that she had slept with her former supervisor, Dennis Hisey. He stated that “it was that instant” when he planned to kill her, but that he had to “stay cool” until he had the opportunity to secure a weapon.
The day before the murder, Kopsho visited William Steele, who he knew owned a 9 mm. Kopsho asked to see the weapon, pretending to be in the market for one. The next day, Kopsho went to Wal-Mart and purchased a Crossman BB gun that resembled Steele’s gun. He returned to Steele’s home and switched the Crossman for Steele’s gun. Kopsho also withdrew $3000 in one-hundred dollar bills from his account at Florida Credit Union that morning. He explained that he withdrew the money to take with him to prison, “so it wouldn’t be tied up in his bank.”
After running these errands, Kopsho returned to work and asked Lynne to accompany him to the bank to make a large withdrawal. He told Lynne he needed her signature to make the withdrawal, explaining that he needed the money to go to Ohio to visit his sister. Kopsho parked his truck behind Lynne’s so that she would have to ride with him.
Once in the truck, Kopsho told Lynne they were travelling to a different branch on State Road 40 so that she would not question the route he travelled, which was in the opposite direction of their normal bank branch. He actually intended to drive into Ocala National Forest to kill her. Kopsho hid Steele’s gun in the driver’s door panel and covered the butt so that Lynne would not notice it. Lynne did not notice that he drove in the opposite direction of the bank, but did comment that she thought they had gone too far once they reached the intersection of State Road 40 and Silver Springs. During the drive, Lynne and Kopsho discussed her coming to get her things from their home.
Eventually, Lynne began discussing wanting “closure.” Kopsho replied that he also wanted closure and drew the gun. Lynne tried to jump out of the truck even though Kopsho was still traveling at approximately 60 miles per hour. He applied the brakes and pulled her back by her hair. She grabbed the steering wheel. The truck veered to the side of the road *210 and stopped. Lynne broke free and exited the truck. Kopsho pursued her and shot three times. Witnesses observed Lynne’s attempt to escape and heard Kopsho fire the weapon.
Kopsho told a bystander to call the police because he had just shot his wife. He also used his cell phone to call 911. He told the operator, “Yes. I just shot my wife.” He refused to give his name, but gave a description of his clothing. He repeatedly told bystanders to stay away “because it’s a crime scene.” In his statement, he explained that he told the witnesses to stay away because he did not want anyone to help Lynne because he wanted her to die. He cooperated with police once they arrived.
Kopsho never denied guilt: he confessed to the 911 operator and during his interview with the police. He volunteered to police and later stipulated in trial that he literally had Lynne’s blood and gunpowder residue on his hand. Kopsho also emphasized that Lynne’s murder was planned. He repeatedly referred to the crime as “premeditated” and claimed that confessing was “part of the plan.” Kopsho stated that he knew he “was gonna be sitting here talking to [law enforcement] today.” When asked if he was “making anything up to make yourself look worse,” Kopsho stated that he was not. However, Kopsho also stated that “[w]here this happened at was not planned” and that Lynne “might have — she might have even talked me out of this if she wouldn’t have scrambled like she did.” At the end of his statement, Kopsho again announced, “I’ve been honest. I’ve been open with you. I’ve got nothing to lie about. I’m not trying to make myself look any worse than what the situation is. I’m not trying to talk my way out of what I did.”
Dr. Susan Ignacio confirmed that Lynne’s death was caused by eight gunshot wounds, but that the wounds were likely caused by three shots.
Upon this evidence, on May 22, 2009, the jury found Kopsho guilty.
Penalty Phase
During the penalty phase, the State called six witnesses and two witnesses in rebuttal. The witnesses testified regarding Kopsho’s behavior after Lynne was shot; established that Kopsho was serving probation at the time of the murder; provided victim impact statements; and presented testimony from Helen Little, who was presented to establish Kopsho’s prior conviction for kidnapping and sexual assault. The State’s rebuttal witnesses responded to Kopsho’s characterization of his emotional development.
The defense presented eight witnesses who provided information regarding Kop-sho’s strict upbringing; described Kop-sho’s work ethic; provided information relating to the deplorable conditions at the Indiana Boys’ School, where Kopsho spent some time; and presented testimony relating to Kopsho’s emotional development.
Sentencing Order
Kopsho was sentenced to death on July 2, 2009. The trial judge found four aggravating circumstances: (1) that at the time of the murder Kopsho was under a sentence of imprisonment or on felony probation (minimal weight); (2) that Kopsho had committed a prior violent felony (great weight); (3) that the murder was committed during an armed kidnapping (moderate weight); and (4) that the murder was cold, calculated, and premeditated (great weight).
The trial judge found no statutory mitigating circumstances and the following nonstatutory mitigating circumstances: (1) that Kopsho suffered from mental or emotional disturbance (moderate weight); (2) was reared in an unloving home (little *211 weight); (B) was subjected to emotional and physical abuse as a child (little weight); (4) was abandoned by his mother at age sixteen (little weight); (5) was sent to juvenile detention at age sixteen (little weight); (6) was housed with violent criminals for eight months at age eighteen (little weight); (7) was beaten while at juvenile detention (little weight); (8) was a good brother (little weight); (9) was a good father (little weight); (10) that society would be protected by a life sentence (little weight); (11) that Kopsho made voluntary statements and was cooperative (little weight); (12) that he did not flee and assisted in his arrest (little weight); (13) that the murder occurred in the context of marital discord (little weight); (14) that Kopsho was a knowledgeable and helpful employee, was dependable and performed excellent work, and attended bible studies (little weight).
On appeal, Kopsho raises eight issues: (1) whether the trial court erred in permitting evidence of Kopsho’s prior bad acts; (2) whether the trial court erred in finding that the murders were committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification; (3) whether the jury’s recommendation at the penalty phase was tainted by improper victim impact evidence; (4) whether the trial court erred in overruling Kopsho’s objections and allowing introduction of evidence of his extramarital sexual relationship; (5) whether the trial court erred in denying Kopsho’s motion for judgment of acquittal on the kidnapping charge; (6) whether the trial court erred in instructing the jury on the heinous, atrocious, or cruel aggravator; (7) whether his death sentence is proportional; and (8) whether the trial court erred in sentencing Kopsho to death because section 921.141, Florida Statutes (2009), unconstitutionally allows the trial court to proceed without, among other things, a unanimous death recommendation from the jury in contravention of the sixth amendment. The State raises two claims on cross-appeal: (1) whether the trial court erred in failing to find the heinous, atrocious, or cruel (HAC) aggravator; and (2) whether the trial court erred in denying the State’s Motion in Limine regarding the testimony of Dr. Elizabeth McMahon. Additionally, we review for sufficiency of the evidence to uphold Kopsho’s convictions and sentence. For the following reasons, we affirm.
ANALYSIS
Prior Bad Acts
In his first issue, Kopsho argues that the trial court improperly allowed the State to present Williams[1] rule evidence during the guilt phase where the prejudicial value outweighed the probative value. First, Kopsho alleges that the evidence that he previously abducted his wife at knifepoint should have been excluded as it was during the first trial. The State contends that the evidence was necessary to show that the crime was premeditated, as Kopsho’s defense was that he murdered Lynne in the heat of passion. Secondly, Kopsho alleges that the trial court permitted overly prejudicial evidence of prior bad acts during the penalty phase. Specifically, Kopsho objects to the introduction of testimony detailing the kidnapping and assault of Kopsho’s ex-girlfriend, Little, to support the prior violent felony conviction aggravator. The State contends that the trial judge did not err because such evidence must be presented through testimony of the victim as required by this Court. We find both of Kopsho’s arguments to be without merit.
*212 In Williams, we articulated the following standard for the admission of such evidence:
Our view of the proper rule simply is that relevant evidence will not be excluded merely because it relates to similar facts which point to the commission of a separate crime. The test of admissibility is relevancy. The test of inadmissibility is a lack of relevancy.
Id. at 659-60 (emphasis omitted). As codified in section 90.404(2), Florida Statutes (2009), “[sjimilar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” However, such evidence is “inadmissible when the evidence is relevant solely to prove bad character or propensity.” When Williams rule evidence is improperly admitted because its sole purpose was to prove bad character or propensity, or because it was irrelevant to an issue of material fact, its admission is presumed harmful and amounts to reversible error. See, e.g., Williams, 110 So.2d 654; see also Straight v. State, 397 So.2d 903, 908 (Fla.1981).
Evidence of other crimes, wrongs or acts is admissible if (1) it is relevant and has probative value in proof of the instant case or some material fact or facts in issue; and (2) its sole purpose is not to show the bad character of the accused; and (3) its sole purpose is not to show the propensity of the accused to commit the instant crime charged; and (4) its admission is not precluded by some other specific exception or rule of exclusion. Green v. State, 190 So.2d 42, 46 (Fla. 2d DCA 1966) (discussing Williams, 110 So.2d 654). This Court has held that before admitting collateral crime evidence, the trial court must make four determinations: (1) whether there is sufficient evidence that the defendant committed the collateral crime; (2) whether the collateral crime meets the necessary similarity requirements necessary to be relevant; (3) whether the collateral crime is too remote, so as to diminish relevance; and (4) whether the prejudicial effect of the collateral crime substantially outweighs the probative value. Peterson v. State, 2 So.3d 146, 153 (Fla.2009). In making its determination, the trial court must find that the prior acts were proved by clear and convincing evidence prior to admitting the evidence to the jury. McLean v. State, 934 So.2d 1248, 1262 (Fla.2006). Thus, relevant evidence of other crimes, wrongs, or acts is admissible if the probative value to show motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident outweighs any unfair prejudice, confusion of the issues, misleading of the jury, or needless presentation of cumulative evidence. See LaMarca v. State, 785 So.2d 1209 (Fla.2001).
Further, introduction of other crimes evidence is not limited to crimes with similar facts. Bradley v. State, 787 So.2d 732, 741 (Fla.2001) (citing Zack v. State, 753 So.2d 9, 16 (Fla.2000)); see also Bryan v. State, 533 So.2d 744 (Fla.1988). Dissimilar fact evidence may be admissible under section 90.402, but like similar fact evidence its admissibility is determined by its relevance. Bradley, 787 So.2d at 741. It is permissible to introduce evidence that helps to put the entire case into perspective to the extent that its relevance is not outweighed by its prejudicial effect. Id. at 742 (citing Zack, 753 So.2d at 17).
Therefore, the evidence was relevant to developing the circumstances leading up to the murder, regardless of whether it is termed similar or dissimilar evidence. See Coolen v. State, 696 So.2d 738, 742-43 (Fla.1997) (evidence of knife threat to victim’s son was relevant to show defen *213 dant’s state of mind on the night of the murder); Ferrell v. State, 686 So.2d 1324, 1328-29 (Fla.1996) (evidence of robbery was properly admitted to complete the story of the crime on trial and to explain defendant’s motivation in seeking to prevent retaliation by the victim).
Bradley, 787 So.2d at 742.
Guilt Phase
 In the guilt phase, the State introduced evidence of a separate incident, prior to the murder but after Lynne had moved out, during which Kopsho abducted her at knifepoint. During the hearing for the motion in limine to exclude the evidence, Kopsho argued that because he had confessed to the murder and had stated that the murder was premeditated, the evidence should have been excluded because its prejudicial effect outweighed its probative value. The State argued that the evidence was relevant to establish premeditation because, despite his confession, Kopsho still argued that Lynne’s death did not constitute first-degree murder. The trial court did not err in allowing the evidence. As we have stated, “The fact that evidence might prejudice the defendant during the sentencing procedure is not a ground for excluding it during the guilt phase of the trial, as long as the evidence is relevant and admissible.” Randolph v. State, 463 So.2d 186, 189 (Fla.1984).
In a factually similar case, we concluded that the prior bad act was admissible. In McWatters v. State, 36 So.3d 613 (Fla.2010), the defendant was charged with the sexual battery and murder of two victims. McWatters claimed, as does Kopsho, that the murders were not premeditated but had occurred during the heat of passion. The State sought to introduce evidence of a third similar homicide that was not consolidated with the murders in that case. Id. at 627. We found the evidence was relevant to the issues of lack of consent, premeditation, intent, and absence of mistake. Id. at 628 (citing Conde v. State, 860 So.2d 930, 945 (Fla.2003)).
As did the appellant in McWatters, Kopsho claims that he shot the victim because she tried to run from the vehicle and that he was emotionally distraught because of her infidelity. His prior abduction of Lynne demonstrates that he had previously harmed Lynne, prior to learning of her infidelity, and that her subsequent murder was not likely in the heat of passion.
Penalty Phase
On January 14, 1992, Kopsho was convicted of the felony crimes of false imprisonment while armed and sexual battery against Little, Kopsho’s ex-girlfriend. During the penalty phase, the State did not accept Kopsho’s offer to stipulate to this conviction to prove the prior violent felony aggravator. Instead, the State introduced testimony from Little regarding her abduction and sexual assault.
Little testified that one night she awoke to a noise and saw Kopsho standing in her bedroom doorway. Before she could move, Kopsho was sitting on top of her, pinning her legs. He held her arms and repeatedly slapped her in the face. He called her names and told her he had seen her go out to lunch with people from work. Little attempted to reach for a high-powered BB gun she kept under her bed. Kopsho continued to wrestle with her and she fell off the bed. He sat on her and wrapped a phone cord around her neck. Little fought Kopsho off of her and tried to get away. As she attempted to break out her bedroom window, Kopsho hit her in the shoulder, arm, and head with the butt of a shotgun. Little tried to crawl underneath the bed to get away. She was bleeding profusely from the head as she told Kopsho, “Stop, I’m hurt, I’m hurt, *214 stop.” Kopsho pushed Little into a chair in the living room. He paced through the house and was throwing things. He told Little to rinse the blood off herself. Kop-sho put the gun in Little’s face and told her to write a letter to her father, to tell him “bye.” Little wrote a note in the dust on her coffee table which said, “Bill did this.” Little was exhausted and terrified. She lay on her bed and was “in and out of consciousness.” Kopsho got on top of her and sexually assaulted her. Afterward, Kopsho gave her clothes to put on. He led her out of her home and they ended up in his truck.
Little knew the shotgun was behind the seat as they drove toward Ocala. Kopsho gave her a blanket and some water. Kop-sho checked them into a motel when they reached Ocala. Little recalled Kopsho pacing back and forth, “I guess figuring out what to do.” Little went into the bathroom and tried to figure out “how to get out.” Kopsho sexually assaulted her again. Little begged Kopsho to take her to a hospital. He said, “I could take you and we could tell them that you were in a fight.” Little convinced Kopsho that she would make medical personnel believe that story. Hospital personnel called the police. Little told police what had happened. Police found the shotgun with Little’s blood on it. Kopsho’s pants had Little’s blood on them, as well. Kopsho was arrested.
Kopsho alleges that this evidence was presented in violation of Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). This Court has previously held that the United States Supreme Court’s decision in Old Chief does not impact a trial court’s discretion regarding the introduction of penalty phase evidence regarding a defendant’s prior felony conviction. Explaining our refusal to extend Old Chief to capital sentencing proceedings, we stated, “We have consistently stated that ‘any relevant evidence as to the defendant’s character or the circumstances of the crime is admissible [during capital] sentencing’ proceedings.” Cox v. State, 819 So.2d 705, 716 (Fla.2002) (alteration in original) (quoting Stano v. State, 473 So.2d 1282, 1286 (Fla.1985)); see also Rhodes v. State, 547 So.2d 1201, 1204 (Fla.1989) (“Testimony concerning the events which resulted in the [prior] conviction assists the jury in evaluating the character of the defendant and the circumstances of the crime so that the jury can make an informed recommendation as to the appropriate sentence.”); § 921.141(1), Fla. Stat. (2001) (“In the [capital sentencing] proceeding, evidence may be presented as to any matter that the court deems relevant to ... the character of the defendant....”). Accordingly, the trial court had no obligation to factor in the defense’s offer to stipulate when ruling on the admission of penalty phase evidence regarding Kopsho’s prior felony conviction.
The Cold, Calculated, and Premeditated (CCP) Aggravating Circumstance
To establish the CCP aggravator, the State must prove beyond a reasonable doubt that (1) the killing was the product of cool and calm reflection and not an act prompted by emotional frenzy, panic, or a fit of rage (cold); (2) the defendant had a careful plan or prearranged design to commit murder before the fatal incident (calculated); (3) the defendant exhibited heightened premeditation (premeditated); and (4) the murder was committed with no pretext of legal or moral justification. § 921.141(5)(i); Pearce v. State, 880 So.2d 561, 575-76 (Fla.2004).
McWatters, 36 So.3d at 640-41. In other words, the defendant must have an opportunity for cool and calm reflection and actually coolly and calmly reflect. In *215 Lynch v. State, 841 So.2d 362 (Fla.2003), we explained the standard of review of a trial court’s finding of an aggravating factor:
[I]t is not this Court’s function to reweigh the evidence to determine whether the State proved each aggravating circumstance beyond a reasonable doubt.... Rather, our task on appeal is to review the record to determine whether the trial court applied the right rule of law for each aggravating circumstance and, if so, whether competent substantial evidence supports its finding.
Id. at 368 (quoting Way v. State, 760 So.2d 903, 918 (Fla.2000)).
Within the confines of this deferential standard of review, we closely scrutinize the evidence to ensure the CCP finding is supported. See, e.g., Santos v. State, 591 So.2d 160, 162 (Fla.1992) (“[T]he record discloses that the State failed to prove beyond a reasonable doubt that the present murder was cold, calculated, and premeditated.”); Mahn v. State, 714 So.2d 391, 398 (Fla.1998) (finding trial court abused its discretion in finding CCP because “to satisfy the burden of proof, the circumstantial evidence must be inconsistent with any reasonable hypothesis which might negate the aggravating factor”).
Kopsho argues that (1) the trial court’s finding of CCP is not supported by the evidence because while he planned Lynne’s murder, the actual murder occurred on the spur of the moment, not according to a premeditated plan and that (2) the trial court’s finding of CCP is not supported by the evidence because Kopsho’s emotional distress at the time of the murder negates the cool and calm elements of CCP. Kop-sho does not dispute that the murder was committed without pretense of moral or legal justification.
Kopsho’s argument that the trial court improperly found CCP because the murder did not go according to plan is without merit. In Sweet v. State, 624 So.2d 1138 (Fla.1993), we upheld a finding of CCP where the victim was not the subject of the defendant’s plan. Sweet forced his way into an apartment intending to kill the occupant. To his surprise, the target’s neighbors were also present. Sweet killed one of the neighbors rather than his intended victim. We explained:
[T]he key to this factor is the level of preparation, not the success or failure of the plan, and we therefore reject Sweet’s argument that because there were survivors of the shooting this ag-gravator is not applicable. Sweet was probably surprised by the presence of Cofer’s neighbors, and planning is not the equivalent of shooting skill.
Id. at 1142. Moreover, we have explained that heightened premeditation exists “where a defendant has the opportunity to leave the crime scene and not commit the murder but, instead, commits the murder.” Owen v. State, 862 So.2d 687, 701 (Fla.2003). In the instant case, Kopsho had ample opportunity to choose whether to complete the intended murder after his original plan was interrupted. He got out of the truck, loaded the gun, and ran Lynne down rather than allowing her to escape. The fact that Lynne’s escape from the truck forced Kopsho to modify his otherwise carefully prearranged plan does not negate the premeditated and calculated elements of CCP.
Further, Lynne’s murder was the product of cool and calm reflection. Kopsho planned the murder for a period of at least three days. During this time, he confessed that he acted “cool” and “calm” so Lynne would not be aware of his plan until he could secure a weapon. The morning of her murder, he withdrew $3000 to take *216 with him to prison, stole the murder weapon from his friend, then picked up Lynne under false pretenses. As he drove to his planned destination of Ocala National Forest, he conversed calmly with Lynne, who was not made aware of his plans until he drew his weapon. While the actual murder did not take place according to his plan because Lynne tried to escape, her attempt to flee should not negate that his plan was the result of cool, calm reflection. Further, his actions after he shot Lynne— keeping bystanders away so that Lynne would die — are not the actions of someone prompted by emotional frenzy, panic, or a fit of rage.
We have explicitly held that a finding of mental and emotional distress and the domestic nature of a murder do not preclude a finding of CCP:
[A] defendant can be emotionally and mentally disturbed or suffer from a mental illness but still have the ability to experience cool and calm reflection, make a careful plan or prearranged design to commit murder, and exhibit heightened premeditation.
Lynch, 841 So.2d at 371-72 (quoting Evans v. State, 800 So.2d 182, 193 (Fla.2001)). In Lynch, the defendant shot his ex-girlfriend, Morgan, in the leg as she stood in her doorway, dragged her into her apartment, and then later shot her in the back of the head to “put her out of her misery.” Id. at 366, 372. We found the evidence supported a finding of CCP:
Morgan did not offer any resistance or provocation. Further, witnesses reported a five- to seven-minute delay between the initial shots and the final three after Morgan had been wounded in the initial confrontation. During this time, Lynch had the opportunity to withdraw or seek help for Morgan by calling 911; instead he calculated to shoot her again, execution-style. Despite Lynch’s subsequent attempted self-serving rationalization that he only wanted to put her out of her misery, the appellant’s execution-style murder of Morgan clearly satisfies the “cold” element of CCP.
Id. at 372. Like Lynch, Kopsho waited until after his victim died to call 911. Additionally, in Zakrzewski v. State, 717 So.2d 488, 492 (Fla.1998), we rejected the defendant’s argument that it was impossible for him to have murdered in a cold, calculated, and premeditated fashion because he was under extreme emotional distress at the time of the murders. We concluded that the murders were calculated and premeditated because Zakrzewski “proceeded to set up the murder scene before his family arrived home, by placing the machete behind the bathroom door.” Id. As for “cold,” we found that after Zakrzewski’s wife asked for a divorce, he “had the entire day for ‘cool and calm reflection’ ” and he “completed his daily routine” at work before murdering his family. Because Zakrzewski went about his normal daily routine, we found that the murders were not “prompted by emotional frenzy, panic, or a fit of rage.” Id. (quoting Jackson v. State, 648 So.2d 85, 89 (Fla.1994)).
Our decisions in Lynch and Zakrzewski support the finding of CCP in the instant case.
Victim Impact Evidence
We have cited with approval our decision in Windom v. State, 656 So.2d 432 (Fla.1995), which upheld the admission of victim impact evidence and Florida’s procedures for addressing victim impact evidence. Perez v. State, 919 So.2d 347, 368 (Fla.2005). Kopsho has not demonstrated that this rule of law has proven unacceptable or unworkable in practice. See, e.g., State v. Green, 944 So.2d 208, 217 (Fla.2006) (“Stare decisis yields ‘when an established rule of law has proven unacceptable *217 or unworkable in practice.’ ”) (quoting Allstate Indem. Co. v. Ruiz, 899 So.2d 1121, 1131 (Fla.2005)). We therefore decline Kopsho’s invitation to recede from Windom.
Extramarital Affair
On direct examination, the State asked Jane Cameron, Kopsho’s friend and coworker, if Lynne was living with Kopsho during the week of the killing. She responded negatively. The State then asked if anyone was living with Kopsho at the time of the killing. Jane stated that a woman named Vivian was living with Kop-sho. On October 25, Jane invited Kopsho and his friend Vivian to dinner at her home. Kopsho told Jane that he and Vivian had a “sexual relationship.” When the State inquired whether Kopsho told Jane the nature of his relationship with Vivian, the defense objected that the answer to that question was irrelevant and was only being asked in an effort to besmirch Kop-sho’s character. The State argued that the evidence was relevant to Kopsho’s state of the mind at the time of the killing, which was put in issue by the defense’s second-degree murder theory. The State also argued that the evidence was relevant to impeach Kopsho’s videotaped statement that while he was living with Vivian he “would never have sex with her, [he’d] never cheat on [his] wife.”
The admission or exclusion of evidence is subject to an abuse of discretion standard of review. San Martin v. State, 717 So.2d 462 (Fla.1998). Evidence of “other bad acts,” which are collateral to the crime charged and not considered Williams rule evidence, is admissible if relevant and not more prejudicial than probative. Zack v. State, 753 So.2d 9, 16 (Fla.2000) (citing § 90.403, Fla. Stat. (1995)). Thus, the trial judge’s decision should not be overturned if the record supports a finding the evidence is relevant and not more prejudicial than probative.
“Relevancy has been defined as a tendency to establish a fact in controversy or to render a proposition in issue more or less probable. To be probable, evidence must be viewed in the light of logic, experience and accepted assumptions concerning human behavior.” Zabner v. Howard Johnson’s Inc., 227 So.2d 543, 545 (Fla. 4th DCA 1969). The defense argued that Kopsho was in a state of emotional distress at the time of the killing. Therefore, Kopsho’s emotional state at the time of the killing was in issue. Accordingly, the record supports the trial judge’s finding the nature of Kopsho’s relationship with Vivian was relevant.
The record also supports a finding that the evidence was not more prejudicial than probative. As noted above, Kopsho’s affair with Vivian was probative of his emotional state and his credibility. The testimony was not particularly inflammatory and was not a feature of the State’s case. Accordingly, we find that the trial court did not abuse its discretion in admitting the testimony.
Judgment of Acquittal
A motion for judgment of acquittal should not be granted “unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.” Lynch v. State, 293 So.2d 44, 45 (Fla.1974). The trial court’s function in a motion for judgment of acquittal based on purely circumstantial evidence is to determine whether there is sufficient inconsistency between the evidence presented by the state and the defendant’s theories of innocence. See Orme v. State, 677 So.2d 258, 262 (Fla.1996). If the evidence viewed most favorably to the state creates an inconsistency with the defendant’s theo *218 ry, the trial court should deny the motion and allow the finder of fact to resolve the inconsistency. See Woods v. State, 733 So.2d 980, 985 (Fla.1999). In reviewing the motion, this Court uses a de novo standard of review and upholds the conviction if it is supported by competent, substantial evidence. Pagan v. State, 830 So.2d 792, 803 (Fla.2002).
Kopsho was charged under both sections 787.01(l)(a)(2) and 787.01(l)(a)(3), Florida Statutes (2000). Section 787.01(l)(a) defines kidnapping as:
forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to: ...
2. Commit or facilitate commission of any felony.
3. Inflict bodily harm upon or to terrorize the victim or another person.
In Faison v. State, 426 So.2d 963, 965 (Fla.1983), we adopted the test from State v. Buggs, 219 Kan. 203, 547 P.2d 720 (1976), and held that to support a kidnapping conviction under section 787.01(l)(a)(2) the movement or confinement also:
(a) Must not be slight, inconsequential and merely incidental to the other crime;
(b) Must not be of the kind inherent in the nature of the other crime; and
(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.
We have held that the State need not prove these additional elements to obtain a conviction under section 787.01(1)(a)(3), which only requires an intent to “inflict bodily harm upon or to terrorize another person.” Boyd v. State, 910 So.2d 167, 184 (Fla.2005).
The evidence showed that Lynne entered Kopsho’s truck voluntarily after being asked to accompany Kopsho to the bank. The evidence did not clearly show at what point Lynne realized they were not headed to the bank. The evidence also did not show whether she protested the alternate route. The State argues that Lynne’s confinement in the truck became against her will once Kopsho revealed the gun. Kopsho himself testified that after he pulled the gun, Lynne asked “why” and attempted to jump out of the moving truck. Kopsho applied the brake and grabbed Lynne by the hair to prevent her from jumping. Lynne then grabbed the steering wheel, forcing the truck to the side of the road. Catina Tufts described the truck’s movement as follows: “Well, it was swaying, I wouldn’t say dramatically, but a little bit back and forth.... It screeched to a stop.” According to Shawn Tufts, “There was a vehicle some distance in front of us that started veering — you know, swerving, acting like something was wrong.” But when asked if the truck caught his attention, Shawn answered, “Not really. You know, it didn’t really seem weird to me at first. Until, you know, it stopped and got over off the side of the road and the woman came barreling out of it.”
The evidence supports a finding that Lynne was confined by force against her will at least from the moment Kopsho revealed the gun until she successfully exited the truck. Moreover, under Florida law, any confinement that began while Kopsho and Lynne were in the truck continued as Kopsho chased Lynne along the side of the road. See Farinas v. State, 569 So.2d 425, 430 (Fla.1990) (“At the point in time that the victim escaped from the car and Farinas went after her, the kidnapping was still in progress.”).
*219 By all accounts this confinement was brief. Thus, Kopsho argues that the State did not prove beyond a reasonable doubt that the confinement was not slight and not merely incidental to the shooting. However, the argument is irrelevant because, as mentioned above, the State need not prove that the confinement was not incidental under section 787.01(l)(a)(3). Here, the evidence supports the very minimal required finding that Kopsho confined Lynne with an intent to “inflict bodily harm upon or to terrorize” her. Kopsho’s plan was to drive Lynne down a dirt road into the Ocala National Forest. Kopsho’s stated intent was to either kill her or to make her talk him out of killing her. The former would be bodily harm, the latter would be terrorizing. Accordingly, the trial court properly denied Kopsho’s motion for judgment of acquittal on the armed kidnapping charge.
Jury Instructions
This Court has previously held that no error occurred where a jury was instructed on HAC, even if HAC could not have existed as a matter of law, so long as the jury was properly instructed. Knight v. State, 923 So.2d 387, 408-9 (Fla.2005); Johnson v. Singletary, 612 So.2d 575 (Fla.1993).
“When a defendant asserts that the evidence is insufficient to support an aggra-vator, this Court reviews the record to determine whether the trial court applied the right rule of law for the aggra-vator, and, if so, whether competent, substantial evidence supports its finding.” Johnson v. State, 969 So.2d 938, 957 (Fla.2007). The “trial court may give a requested jury instruction on an aggravating circumstance if the evidence adduced at trial is legally sufficient to support a finding of that aggravating circumstance.” Ford v. State, 802 So.2d 1121, 1133 (Fla.2001).
McWatters, 36 So.3d at 643.
To preserve the issue of whether the jury was properly instructed, “it is necessary both to make a specific objection or request an alternative instruction at trial, and to raise the issue on appeal.” Walls v. State, 641 So.2d 381, 387 (Fla.1994). Here, Kopsho only argues that there was not sufficient evidence to support giving an HAC instruction at all. Because Kopsho does not argue that the jury was given a legally incorrect instruction, this issue is without merit.
Further, a trial judge is obligated to instruct the jury on HAC if the State presents evidence that could establish that aggravating circumstance. See Stewart v. State, 558 So.2d 416, 420 (Fla.1990). Here, the State presented evidence that Lynne suffered at least a brief period of fear, emotional strain, or terror in anticipation of being shot as evidenced by her efforts to force the truck off the road and run from Kopsho. The fact that the ag-gravator was not ultimately proven to the jury beyond a reasonable doubt does not mean there was insufficient evidence to allow the jury to consider the factor. Henry v. State, 649 So.2d 1366, 1369 (Fla.1994) (citing Bowden v. State, 588 So.2d 225, 231 (Fla.1991)). The trial judge did not err in instructing the jury on HAC.
Proportionality
To ensure uniformity of sentencing in death penalty proceedings, we conduct a comprehensive analysis to determine whether the crime falls within the category of both the most aggravated and the least mitigated of murders. This Court considers the totality of circumstances and compares each case with other capital cases. The Court does not simply compare the number of aggravating and *220 mitigating circumstances. Taylor v. State, 937 So.2d 590 (Fla.2006). We have consistently held that the law of Florida reserves the death penalty for only the most aggravated and least mitigated of first-degree murders. State v. Dixon, 283 So.2d 1, 7-8 (Fla.1973).
Because we find that the record supports all four aggravating circumstances found by the trial court, we find Kopsho’s death sentence proportionate. See Connor v. State, 803 So.2d 598 (Fla.2001) (holding death sentence proportionate where defendant murdered ex-girlfriend’s daughter and Court upheld four aggravating circumstances, CCP, HAC, murder committed while engaged in a kidnapping, and previous capital felony; and four nonstatutory mitigating circumstances, mental illness at time of crime, good father, would die in prison if given life sentence, and no disciplinary problems in prison); Blackwood v. State, 777 So.2d 399 (Fla.2000) (holding death penalty proportionate after finding the HAC aggravating factor and one statutory mitigator of significant weight, no significant history of prior criminal conduct, and eight nonstatu-tory mitigating factors); Zakrzewski, 717 So.2d 488 (holding death sentence proportionate where defendant murdered wife and children and trial court found three aggravators, previous capital felony, CCP, and HAC; and two statutory mitigators, extreme disturbance and no prior criminal history); Lemon v. State, 456 So.2d 885, 888 (Fla.1984) (holding death penalty proportionate where two aggravating factors, prior violent felony and HAC, outweighed the mitigating effect of defendant’s emotional disturbance.).
Section 921.141
We have held that it is not unconstitutional for a jury to recommend death on a simple majority vote. Parker v. State, 904 So.2d 370, 383 (Fla.2005). We have also rejected claims that a death sentence is unconstitutional under Ring where the prior violent felony aggravator is present. See, e.g., Patton v. State, 878 So.2d 368, 377 (Fla.2004); Duest v. State, 855 So.2d 33, 49 (Fla.2003) (“We have previously rejected claims under Apprendi and Ring in cases involving the aggravating factor of a previous conviction of a felony involving violence.”), cert. denied, 541 U.S. 993, 124 S.Ct. 2023, 158 L.Ed.2d 500 (2004). We therefore find Kopsho’s argument without merit.
CROSS-APPEAL
HAC Aggravator
The State contends that the trial court improperly determined that HAC could not apply to the murder because Kopsho did not intend to inflict pain on his victim. We find the trial court properly interpreted our precedent stating that we do not routinely apply HAC to “routine” shooting deaths.
Dr. McMahon
Secondly, the State complains that its ability to cross-examine Dr. McMahon was improperly limited by the trial court’s determination first to exclude her notes from discovery, then in denying the State’s Motion in Limine. The State’s Motion in Limine alleged that because Dr. McMahon would not fully disclose the information Kopsho shared with her regarding his upbringing and childhood, the State could not adequately test the nature of the statements or their accuracy. The State relies on cases where hearsay statements were found impermissible because the parties did not testify at trial.
Here, Dr. McMahon testified and was available for cross-examination. Further, although Kopsho himself did not testify, the State was able to present testimony *221 from his sister regarding his upbringing and cross-examine the witnesses he presented to establish his rough childhood. It is unclear how the State was prevented from preparing, or was in any way limited by the trial court’s determinations. Whatever Kopsho’s precise statements to Dr. McMahon, her reports and the results of his tests were available to the State and were produced during discovery. Accordingly, on the record, it does not appear that the State was prejudiced in any way by the trial court’s decision to deny its Motion in Limine. Therefore, the trial court did not abuse its discretion.
Sufficiency
Although not raised by the parties, this Court has an independent duty to review the sufficiency of the evidence to sustain Kopsho’s murder conviction. See Miller v. State, 42 So.3d 204, 227 (Fla.2010), (“[T]his Court has a mandatory obligation to independently review the sufficiency of the evidence in every case in which a sentence of death has been imposed.”) cert. denied, _ U.S. _, 131 S.Ct. 935, 178 L.Ed.2d 776 (2011). “In determining the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the existence of the elements of the crime beyond a reasonable doubt.” Id. (quoting Bradley v. State, 787 So.2d 732, 738 (Fla.2001)).
We find competent, substantial evidence in the record to support Kopsho’s murder conviction. Kopsho confessed to killing Lynne both during his 911 call and during his police interview. During the interview with Detective Owens, Kopsho repeatedly admitted that the crime was premeditated. Even if Kopsho had not confessed to the premeditation, his efforts to secure the gun that killed Lynne would be sufficient to demonstrate premeditation, as would the three shots it took to kill her. Witnesses saw Kopsho stop Lynne from fleeing and shoot her multiple times. Kop-sho kept bystanders away while they watched Lynne die. Accordingly, there would be competent, substantial evidence to support Kopsho’s conviction for the first-degree murder of Lynne Kopsho even if this Court found that there was insufficient evidence to support the kidnapping conviction.
CONCLUSION
For the foregoing reasons, we affirm Kopsho’s conviction of first-degree murder and sentence of death.
It is so ordered.
LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.
CANADY, C.J., concurs in result.
PARIENTE, J., concurs in result with an opinion.

. Williams v. State, 110 So.2d 654 (Fla.1959).